CC-1999-113                                                        1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Lilliam Santos Berríos y otros<br>    Demandantes-Recurridos<br><br>            v.<br><br>Lederle Piperacillin, Inc. y otros<br>    Demandados-Peticionarios | Certiorari<br><br>2001 TSPR 53 |

Número del Caso: CC-1999-113

Fecha: 17/abril/2001

Tribunal de Circuito de Apelaciones:
                                    Circuito Regional VI


Juez Ponente:
                          Hon. Rafael Ortiz Carrión


Abogados de la Parte Peticionaria:
                                Lcdo. José L. Verdiales Morales
                                Lcdo. Javier Rivera Carbone

Abogados de la Parte Recurrida:
                                Lcdo. Luis E. Pabón Roca
                                Lcdo. Raquel Torres Laureano


Materia: Discrimen en el Empleo

        Este documento constituye un documento oficial del Tribunal Supremo que está
        sujeto a los cambios y correcciones del proceso de compilación y publicación
        oficial de las decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Lilliam Santos Berríos y otros

        Demandantes-Recurridos

                                        CC-1999-113

      v.

Lederle Piperacillin, Inc. y otros

      Demandados-Peticionarios

Opinión del Tribunal emitida por el Juez Asociado señor CORRADA DEL RÍO

San Juan, Puerto Rico, a 17 de abril de 2001.

Tenemos la ocasión de expresarnos nuevamente sobre el Art. 5(a) de la Ley del Sistema de Compensaciones por Accidentes del Trabajo (en adelante Ley de Compensaciones), según enmendada, 11 L.P.R.A. sec. 7. En la situación de autos, American Home Products, Inc., Lederle Parenterals, Inc. y Lederle Piperacillin, Inc. (en lo sucesivo Lederle) recurren ante nos impugnando una sentencia del Tribunal de Circuito de Apelaciones (en adelante TCA) que revocó al Tribunal de Primera Instancia (en lo sucesivo TPI). Éste, mediante dos (2) sentencias parciales, desestimó una causa de acción bajo el Art. 5(a) de la Ley de

Compensaciones, *supra*, y otra bajo el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141.

I

A continuación exponemos los hechos que, luego de evaluar la *Solicitud de Sentencia Sumaria Parcial*,[1] y la *Oposición a Solicitud de Sentencia Sumaria Parcial y Solicitud de Sentencia Sumaria Parcial del Demandante*,[2] el TPI estimó no controvertidos.

El 10 de febrero de 1993 la señora Lilliam Santos Berríos (en adelante Sra. Santos) tuvo un accidente en Lederle,[3] su lugar de trabajo desde el 30 de septiembre de 1980. Ésta le notificó dicho accidente a su supervisora inmediata, la Sra. Lilliam Pérez.[4] No obstante, por entender que los dolores serían temporeros y no darle importancia al asunto, la Sra. Santos no le solicitó a su supervisora que la refiriese al Departamento Médico de Lederle o al Fondo del Seguro del Estado (en adelante Fondo). Lederle era patrono asegurado, mas no le dio orientación alguna a la Sra. Santos sobre sus derechos referentes al Fondo.

El 22 de febrero de 1993, mientras trabajaba, la Sra. Santos padeció fuertes dolores en la espalda y en las extremidades. Debido a ello, no acudió al trabajo por tres (3) días consecutivos. El 18 de marzo de 1993 la Sra. Santos le pidió, por primera vez, al médico de Lederle, Dr. Edwin Bossolo, que la enviara al Fondo. Posteriormente, en mayo de 1993, la Sra. Santos sufrió una recaída asociada con el percance del 10 de febrero. Los dolores le causaron una parálisis, la cual se extendió por casi dos (2) semanas.

Cabe señalar que, pese a solicitárselo en tres ocasiones distintas, el Dr. Bossolo no refirió a la Sra. Santos al Fondo.[5] De igual forma, los empleados del

---

[1] Apéndice del recurso de *certiorari*, págs. 41-70.

[2] *Íd.*, págs. 71-97.

[3] Lederle es una corporación que se dedica a la producción de medicinas.

[4] Al levantarse, luego de doblarse a recoger un papel, la Sra. Santos se "enred[ó] con la pata de la silla y los cables de la computadora." Apéndice del recurso de *certiorari*, pág. 194. En vista de ello, trató de evitar caerse, lo que le ocasionó "dolor en la espalda." *Íd.*

[5] En su demanda, la Sra. Santos adujo que, luego de evaluarla, el Dr. Bossolo le aconsejó que no informase el accidente como uno laboral y que fuese a médicos privados. Además, alegó que, tras la exigencia de Lederle, firmó un papel que ésta le presentó conteniendo una renuncia al derecho de acudir al Fondo. Apéndice del recurso de *certiorari*, pág. 18. Según dicho documento, firmado tanto por el Dr. Bossolo como por la Sra. Santos, ésta rehusó acudir al Fondo, no obstante la recomendación del Dr. Bossolo, ya que estaba tratándose con la Dra. Enid M. Berríos. La Sra. Santos anejó este documento a su *Oposición a Solicitud de Sentencia Sumaria Parcial y Solicitud de Sentencia Sumaria Parcial del Demandante*. *Íd.*, pág. 82. Véase también, *Íd.*, págs. 108, 193.

Departamento de Beneficios no se lo permitieron. Inclusive, una vez, tras cumplimentar la Sra. Santos el formulario de reclamación al seguro por incapacidad a corto plazo y seleccionar en el encasillado provisto que la incapacidad ocurrió en el transcurso del trabajo, un agente de Lederle utilizando líquido corrector borró la marca hecha por ésta.[6] En vista de ello, Prudential Insurance Company (en adelante Prudential), aseguradora de Lederle, amenazó con demandar a la Sra. Santos "por reclamaciones fraudulentas."[7]

Así las cosas, el 17 de mayo de 1995, mediante carta dirigida a la Sra. Santos, Lederle declaró vacante la plaza de ésta. Lederle expuso como causa para ello que la Sra. Santos agotó las veintiséis (26) semanas que tenía como licencia por incapacidad.[8]

---

Por otra parte, Lederle asumió, a los fines de su *Solicitud de Sentencia Sumaria Parcial*, que rehusó referir a la Sra. Santos al Fondo, no obstante, lo cualificó negándolo. *Íd.*, pág. 42.

Sin embargo, la posibilidad de controversia de hechos no es óbice para el resultado al cual llegamos.

[6] Véase, Apéndice del recurso de *certiorari*, pág. 96.

El TPI, en una nota al calce, expresó que "[l]a parte demandada no rebatió este hecho en sus escritos ni anejos. Véase Exhibit II de Oposición a Solicitud de Sentencia Sumaria Parcial y Solicitud de Sentencia Sumaria Parcial del Demandante; presentada el 7 de enero de 1998." Apéndice del recurso de *certiorari*, pág. 175.

[7] *Íd.*

[8] La carta, en su parte relativa, leía como sigue:

Estimada Lilliam:

Nuestros registros indican que comenzaste licencia por incapacidad por la condición que actualmente tienes, el 15 de agosto de 1994. Al cumplirse las veintiseis [sic] (26) semanas de haber comenzado dicha licencia, el 15 de febrero de 1995, pudiste reintegrarte nuevamente a tu trabajo. Sin embargo, te ausentaste por la misma condición nuevamente el 29 de marzo de 1995.

**Según te explicaramos [sic] previamente, el período de beneficio provisto por ley en estos**

continúa...

[8] ...continuación

**casos, es de veintiseis [sic] (26) semanas. También te indicamos que los periodos de incapacidad subsiguientes ocacionados [sic] por la misma enfermedad son considerados un sólo periodo de incapacidad si los mismos ocurren en lapsos de menos de 90 días.**

Posteriormente, el 22 de junio de 1995, la Sra. Santos acudió, por primera vez, ante el Fondo con el informe patronal correspondiente. El Fondo estimó que la Ley de Compensaciones, 11 L.P.R.A. sec. 1 *et seq.*, cobijaba el accidente ocurrido y, por ende, le concedió a la Sra. Santos el máximo de los beneficios y tratamiento. La Sra. Santos recibió tratamiento médico hasta el 20 de diciembre de 1995, "fecha en que el Fondo la dio de alta definitiva con un 20% de incapacidad permanente en sus funciones fisiológicas generales." (Subrayado en el original.)[9] No conforme con dicho dictamen, la Sra. Santos acudió ante la Comisión Industrial en apelación.[10]

II

El 8 de mayo de 1996, la Sra. Santos, su esposo y la sociedad de gananciales compuesta por ambos (en adelante recurridos) instaron un pleito contra Lederle y Prudential alegando discrimen en el empleo, despido injustificado e incumplimiento de contrato.[11] Invocando varias causas de acción,[12] reclamaron los

---

**Por lo antes expuesto, confirmamos que la posición que ocupabas ha sido declarada vacante efectivo inmediatemente [sic].**

De tener alguna duda o desear información adicional, puedes comunicarte a nuestras oficinas y con mucho gusto te ayudaremos.

Deseándote una pronta recuperación, nos reiteramos a tus ordenes [sic].

Cordialmente,


(Fdo.)
Aida M. Rodríguez
Gerente Recursos Humanos.
*Íd.*, pág. 97.

[9] *Íd.*, pág. 176. Véase, *íd.*, pág. 199.

[10] Al momento en que el TPI dictó las sentencias parciales, dicha apelación se encontraba pendiente de adjudicación ante la Comisión Industrial.

[11] El TPI, mediante sentencia parcial de 20 de enero de 1999, notificada el 4 de febrero del mismo, desestimó con perjuicio la demanda en relación con Prudential. Apéndice del Alegato de la Parte Peticionaria, págs. 1-2.

[12] Constitución de los Estados Unidos; Constitución del Estado Libre Asociado de Puerto Rico; Ley Núm. 80 de 30 de mayo de 1976 (Ley sobre Despido sin Justa Causa), 29 L.P.R.A. sec. 185a *et seq.*; Ley Núm. 100 de 30 de junio de 1959 (Ley sobre Discrimen por Razón de Edad, Raza, Color, Religión, Sexo, Origen Social o Nacional o Condición Social), 29 L.P.R.A. sec. 146 *et seq.*; Ley Núm. 44 de 2 de julio de 1985 (Ley sobre Discrimen contra Impedidos), 1 L.P.R.A. sec. 501 *et seq.*; Ley Núm. 45 de 18 de abril de 1935 (Ley de Compensaciones), supra; Art. 1077 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3052; Art. 1802 del Código Civil de Puerto Rico, *supra*, y la Ley Federal de Licencia Médico-Familiar, 29 U.S.C. sec. 2601 *et seq.*

salarios y beneficios dejados de devengar y aquéllos a que tendría derecho de no ser por su despido, mesada, daños y angustias mentales por el despido discriminatorio, daños sufridos y gastos médicos como consecuencia del accidente, y, por último, cantidades adeudadas por Prudential. Al contestar la demanda, Lederle negó su responsabilidad y esgrimió como defensas, *inter alia*, la ausencia de hechos que justifiquen la concesión de un remedio y la prescripción.

El 16 de octubre de 1997, tras la conclusión del descubrimiento de prueba, Lederle presentó *Solicitud de Sentencia Sumaria Parcial*. Sostuvo, en síntesis, que, incluso bajo el supuesto de negarse a referir a la Sra. Santos al Fondo, ésta carecía de una causa de acción ya que recibió los beneficios y tratamiento establecidos en la Ley de Compensaciones, *supra*, o, en la alternativa, que tal causa de acción prescribió. Ese mismo día, Lederle presentó una moción de desestimación al amparo de la Regla 10.2(5) de Procedimiento Civil –los hechos alegados no justifican la concesión de un remedio bajo la Ley Núm. 100 de 30 de junio de 1959, *supra*–, 32 L.P.R.A. Ap. III.[13] Los recurridos se allanaron a esta última.

No obstante, el 7 de enero de 1998, los recurridos se opusieron a la petición de Lederle y, a su vez, solicitaron sentencia sumaria a su favor. Fundaron su contención en que, debido a la falta de orientación por parte de Lederle sobre los derechos y beneficios en caso de accidentes y la omisión de ésta de informar el percance al Fondo, el término prescriptivo empezó a decursar desde que la Sra. Santos acudió al Fondo y advino en conocimiento de los beneficios no obtenidos.

El 21 de abril de 1998, luego de obtener el permiso correspondiente, los recurridos presentaron una demanda enmendada, a los fines de incluir una causa de acción al amparo del Art. 5(a) de la Ley de Compensaciones, *supra*. Ante ello, Lederle se opuso y solicitó la desestimación de dicha enmienda.

El 2 de junio de 1998 el TPI, mediante sentencia sumaria parcial, desestimó la reclamación de daños y perjuicios contra Lederle porque entendió que el incumplimiento de ésta en reportar el accidente no impidió que la Sra. Santos recibiese los beneficios provistos por la ley. De igual forma, desestimó la causa de acción por discrimen en el empleo ya que los recurridos se allanaron a la solicitud de Lederle.[14]

El 29 de junio de 1998, tras tomar en consideración las determinaciones de hecho previamente esbozadas, el TPI estimó que la Sra. Santos no tenía derecho

---

[13] Alegato de la Parte Peticionaria, págs. 3-6.
[14] El TPI notificó dicha sentencia el 8 de junio de 1998.

a la reinstalación en su puesto y, por tanto, desestimó la causa de acción bajo el Art. 5(a) de la Ley de Compensaciones, *supra*.[15]

No conformes, los recurridos acudieron ante el TCA impugnando, en un mismo escrito, ambos dictámenes. Luego de acoger el recurso como de *certiorari*, el foro apelativo intermedio revocó. Razonó que, al faltar un patrono a su obligación de informarle al Fondo un accidente ocurrido en el trabajo, el plazo de reserva de empleo empieza a correr cuando el patrono reporta tal incidente al Administrador. De igual forma, concluyó que los hechos no controvertidos dan base "a una causa de acción de reinstalación e indemnización de los daños causados bajo el Artículo 5(a) de la Ley de Compensaciones por Accidentes del Trabajo y el Artículo 1802 del Código Civil de Puerto Rico."[16] Oportunamente, Lederle presentó una moción de reconsideración, la cual el TCA denegó.

En vista de ello, Lederle, recurrió ante nos, vía *certiorari*, señalando la comisión de los siguientes errores:

> A.     Incidió manifiestamente el Tribunal Apelativo al resolver que la demandante tiene derecho a presentar una reclamación en daños y perjuicios en contra de su patrono, por la tardanza de éste en informar al Fondo del Seguro del Estado el accidente del trabajo que ésta sufriera, a pesar [de] que ella recibió los beneficios y compensación del Fondo. Esta determinación conflige [sic] abiertamente con lo resuelto por este Honorable Tribunal en los casos de Torres v. Municipio, 62 D.P.R. 711 (1943), y Alonso v. Comisión Industrial, 103 D.P.R. 751 (1975). (Subrayado en el original.)

> B.     Incidió manifiestamente el Tribunal Apelativo al resolver que el período de reserva de doce meses dispuesto en el Artículo 5A de la Ley Compensatoria comienza a contar desde la fecha en que la demandante se reportó al Fondo (22 de junio de 1995) y no desde la fecha de su accidente (10 de febrero de 1993). Esta interpretación es contraria al propio texto del Artículo 5A y al caso de Torres v. Star Kist Caribe[, Inc.], [134 D.P.R. 1024 (1994)], 94 J.T.S. 5. (Subrayado en el original.)

Contando con el beneficio de los alegatos de ambas partes, resolvemos.

III

A los fines de facilitar el análisis de las controversias ante nos, atendemos en primer lugar el señalamiento de error relacionado con el Art. 5(a) de la Ley de Compensaciones, *supra*.

El Art. 5(a) de la Ley de Compensaciones, *supra*, preceptúa que:

> "[e]n los casos de inhabilitación para el trabajo de acuerdo con las disposiciones de este Capítulo, el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero o empleado al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:

>> (1)     Que el obrero o empleado requiera al patrono para que lo reponga en su empleo dentro del término de quince días, contados a partir de la fecha en que el obrero o empleado fuere dado de alta, y **siempre y cuando que dicho requerimiento no se haga después de**

---

[15] Esta sentencia se notificó el 6 de julio de 1998.
[16] Apéndice del recurso de *certiorari*, pág. 179.

> **transcurridos doce meses desde la fecha del accidente;**
>
> (2)  que el obrero o empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición, y
>
> (3)  que dicho empleo subsista en el momento en que el obrero o empleado solicite su reposición. (Se entenderá que el empleo subsiste cuando el mismo está vacante o lo ocupe otro obrero o empleado. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro obrero o empleado dentro de los treinta días siguientes a la fecha en que se hizo el requerimiento de reposición.)
>
> Si el patrono no cumpliere con las disposiciones de esta sección vendrá obligado a pagar al obrero o empleado o a sus beneficiarios los salarios que dicho obrero o empleado hubiere devengado de haber sido reinstalado, además le responderá de todos los daños y perjuicios que le haya ocasionado. El obrero o empleado, o sus beneficiarios, podrán instar y tramitar la correspondiente reclamación de reinstalación y/o daños en corte por acción ordinaria o mediante el procedimiento para reclamación de salarios, establecido en las secs. 3118 a 3132 del Título 32 [Ley Núm. 2 de 17 de octubre de 1961]. (Énfasis nuestro.) Véase, además, Sec. 44 del Reglamento Núm. 3966 de 9 de agosto de 1989, conocido como Reglamento sobre Derechos de Obreros y Empleados, 11 R.P.R. sec. 300.292.

De una lectura de dicho artículo surge claramente que el mismo le impone dos obligaciones al patrono, las cuales a su vez son protecciones a favor del obrero, a saber: (1) el patrono tiene que reservar el puesto o posición por un término de doce (12) meses, contados a partir de la fecha del accidente; y (2) el patrono tiene que reinstalar al obrero, de éste así solicitárselo, en tal posición, siempre y cuando se cumplan ciertos requisitos.[17]

El Art. 5(a) de la Ley de Compensaciones tiene como objetivo prevenir que un patrono despida sin justa causa a un trabajador acogido a dicho estatuto, mediante la creación de la referida reserva. *García v. Darex P.R., Inc.*, res. el 20 de mayo de 1999, 99 TSPR 79, 148 D.P.R. ___ (1999), 99 JTS 84, pág. 1056; *Carrón Lamoutte v. Compañía de Turismo*, 130 D.P.R. 70, 78 (1992). A través de este artículo, el legislador armonizó, de un lado, la protección y seguridad del obrero lesionado, y, por otro lado, los intereses pecuniarios del patrono. No estableció una reserva de empleo indefinida –*Soc. de Gananciales v. Royal Bank de P.R.*, res.

---

[17] El Art. 5(a) de la Ley de Compensaciones, *supra*, ampara al obrero si éste cumple con los siguientes: (1) que el percance o enfermedad ocupacional lo incapacite para trabajar; (2) que solicite los beneficios del Fondo; (3) que le requiera al patrono que lo reponga a su antigua posición; (4) que haga tal requerimiento dentro de los quince (15) días siguientes a que el Fondo lo dé de alta definitiva y lo autorice a reintegrarse a la fuerza laboral; (5) que realice el referido requerimiento dentro

continúa...

[17] **...continuación**
del término de doce (12) meses luego de la ocurrencia del accidente o enfermedad; (6) que cuando solicite su reinstalación esté capacitado tanto mental como físicamente para ocupar el puesto; y (7) que dicha posición exista al momento de tal solicitud. *Cuevas v. Ethicon Div. J&J Prof. Co.*, res. el 30 de junio de 1999, 99 TSPR 107, 148 D.P.R. ___ (1999), 99 JTS 111, págs. 1315-1316; *Torres v. Star Kist Caribe, Inc.*, supra, pág. 1030; Opinión Núm. 90-5 del Secretario del Trabajo y Recursos Humanos, págs. 2-3. Véase, además, *Matías v. Mun. de Lares*, res. el 16 de marzo de 2000, 2000 TSPR 43, 150 D.P.R. ___ (2000), 2000 JTS 57, pág. 859; *Vélez Rodríguez v. Pueblo Int´l, Inc.*, 135 D.P.R. 500, 514 (1994).

el 1 de abril de 1998, 98 TSPR 36, 145 D.P.R. ___ (1998), 98 JTS 37, pág. 750; *Torres v. Star Kist Caribe, Inc.*, supra, pág. 1033[18] sino que, al considerar la carga que la misma podría constituir para el patrono, la limitó a sólo doce (12) meses. *Cuevas v. Ethicon Div. J&J Prof. Co.*, supra, pág. 1316; *Torres v. Star Kist Caribe, Inc.*, supra; *Santiago v. Kodak Caribbean, Ltd.*, 129 D.P.R. 763, 770-771 (1992). Este término de doce (12) meses, el cual por ser uno de caducidad no es objeto de interrupción, comienza a correr desde el momento del accidente o enfermedad laboral.[19] *Cuevas v. Ethicon Div. J&J Prof. Co.*, supra; *Soc. de Gananciales v. Royal Bank de P.R.*, supra; *Alvira v. SK & F Laboratories Co.*, res. el 4 de abril de 1997, 142 D.P.R. ___ (1997), 97 JTS 40, pág. 818. Véase, además, *García v. Darex*, supra. pág. 1057.

"La reserva de doce (12) meses logra que el obrero no tenga que enfrentarse a la incertidumbre indeseable de que por haber sufrido un accidente de trabajo su patrono lo despida, a la vez que promueve un ambiente de tranquilidad en el cual el obrero puede recuperarse con mayor celeridad." *Íd.*, pág. 1056. Véase, *Rodríguez v. Méndez & Co.*, supra, pág. 693. Dicha reserva es independiente de si el obrero solicita o no su reinstalación dentro del período estatuido. Si el patrono no cumple con dicha reserva "respond[e] por todos los daños y perjuicios que su incumplimiento produzca." *García v. Darex*, supra, pág. 1057. No obstante, una vez transcurrido dicho término, el patrono está en la libertad de despedir al obrero. *Soc. de Gananciales v. Royal Bank de P.R.*, supra; *Carrón Lamoutte v. Compañía de Turismo*, supra.[20]

Por otra parte, la reserva de empleo no cobija a un obrero que, tras ser despedido, reporta al Fondo un accidente ocurrídole previo al despido. Ello debido a que "la reserva de empleo supone la continuación y existencia de la relación obrero-patronal, al menos durante doce (12) meses consecutivos (360 días) a partir de la fecha del accidente." *Santiago v. Kodak Caribbean, Ltd.*, supra, pág. 771, citando la Consulta Núm. 13310 del Procurador del Trabajo.

IV

---

[18] Cabe mencionar que el P. del S. 947, presentado el 29 de marzo de 1971, disponía la eliminación completa del término para solicitar la reinstalación, o sea, indefinidamente. No obstante, la Asamblea Legislativa no aprobó dicho proyecto.

[19] Este término es equivalente a 360 días. Art. 8 del Código Civil, 31 L.P.R.A. sec. 8; *Rodríguez v. Méndez*, res. el 18 de marzo de 1999, 99 TSPR 23, 147 D.P.R. ___ (1999), 99 JTS 28, pág. 697, nota al calce núm. 7; *Torres v. Star Kist Caribe, Inc.*, supra, pág. 1032-1033, nota al calce núm. 4.

[20] De existir justa causa, un patrono puede despedir a un empleado durante el período de reserva. *García v. Darex*, supra; *Santiago v. Kodak Caribbean, Ltd.*, supra, pág. 770.

El TCA, en el presente caso, concluyó que como Lederle no informó el accidente al Fondo, conforme el Art. 11 de la Ley de Compensaciones, 11 L.P.R.A. sec. 14,[21] el término de reserva se interrumpió y se reactivó tan pronto se le informó el accidente al Administrador del Fondo.

No podemos suscribir tal interpretación. Veamos.

De entrada, es menester indicar que, pese a tener un "carácter remedial [sic]" e interpretarse liberalmente a favor del obrero, Art. 2 de la Ley de Compensaciones, 11 L.P.R.A. sec. 2, la Ley de Compensaciones es clara; por tanto, su letra "no debe ser menospreciada bajo el pretexto de cumplir con su espíritu." Art. 14 del Código Civil, 31 L.P.R.A. sec. 14; *Cuevas v. Ethicon Div. J&J Prof. Co.*, supra, pág. 1317; *Rojas v. Méndez & Co., Inc.*, 115 D.P.R. 50, 53 (1984). Además, "en aras de la liberalidad no podemos ir más allá de la ley." *Rojas v. Méndez & Co., Inc.*, supra, pág. 54.

En primer lugar, la ley no sujeta la obligación del patrono –de reservar el puesto de un obrero lesionado– a la eventualidad de si el primero informa o no el accidente. Es decir, no depende de que el patrono someta el informe del accidente al Administrador del Fondo. El deber del patrono de someter el referido informe dentro del término de cinco días de ocurrido el accidente, Art. 11 de la Ley de Compensaciones, *supra*, es uno independiente, cuyo propósito es "que el

---

[21] Dicho artículo, en lo pertinente, dispone que:

> [t]odo patrono deberá llevar un registro de las lesiones graves o leves recibidas por sus obreros o empleados en el curso de su ocupación, o de aquellas enfermedades que protege la ley. Dentro de los cinco días después de ocurrir un accidente deberá el patrono presentar un informe escrito al Administrador del Fondo en blancos suministrados por éste. Dicho informe contendrá el nombre y la naturaleza de la ocupación del obrero o empleado, jornal que ganaba, la
>
> **continúa...**

[21] **...continuación**
> situación del establecimiento, el nombre, edad, sexo y ocupación del obrero o empleado lesionado, indicará la fecha y hora de cualquier accidente que haya causado la lesión,
> la naturaleza y causa de la lesión y cualquier otra información requerida.
>
> Los patronos que rehusaren o descuidaren hacer los informes requeridos por esta sección serán castigados por la sala del Tribunal de Distrito del lugar donde reside el patrono, con una multa que no excederá de cien (100) dólares.

Cabe señalar que previo la aprobación de la Ley Núm. 63 de 1 de julio de 1996, este artículo era el núm. 13. No obstante, dicha ley, la cual no es de aplicación al caso de autos, no adicionó nada a este artículo.

Administrador del Fondo pueda investigar los hechos a la mayor brevedad posible después de ocurrido el accidente." *Torres v. Municipio*, supra, pág. 714. Además, el mismo artículo provee la penalidad o consecuencia de rehusarse o no informar la ocurrencia de un accidente, a saber, una multa de cien (100) dólares.[22]

Segundo, a pesar de que el patrono no informe el percance, la ley le impone al obrero la obligación de acudir al Fondo en un término de cinco (5) días luego del accidente. Art. 5 de la Ley de Compensaciones, 11 L.P.R.A. sec. 6; Sec. 6 del Reglamento sobre Derechos de Obreros y Empleados, 11 R.P.R. sec. 300.253. Al igual que el deber del patrono de informar el accidente, el objetivo de este artículo es la realización de una investigación adecuada por el Fondo a los fines de determinar si el accidente es compensable o no. *Padín v. Cía. Fom. Ind.*, res. el 25 de febrero de 2000, 2000 TSPR 32, 150 D.P.R. ___ (2000), 2000 JTS 44, pág. 761; *González Saldaña v. Comisión Industrial*, 89 D.P.R. 267, 276 (1963); *Guzmán Muñoz v. Comisión Industrial*, 85 D.P.R. 700, 703 (1962). Inclusive, tal como ocurrió en la situación de autos, si el Administrador establece que el accidente está cubierto por la ley puede otorgar la debida compensación, pese a la tardanza en presentar el informe. *González Saldaña v. Comisión Industrial*, supra.[23]

Tercero, conforme a lo expresado, el término de doce (12) meses de la reserva no es objeto de interrupción ya que es de caducidad. Por lo que, la falta de notificación al Fondo no puede interrumpirlo.

En la situación de autos, según surge de los hechos no controvertidos, la Sra. Santos sufrió el accidente ocupacional el 10 de febrero de 1993. En vista de ello, la obligación de Lederle de reservarle su plaza cesó el 5 de febrero de 1994. Ello implica que, al momento en que la Sra. Santos disfrutaba de los beneficios de la licencia por incapacidad, Lederle no tenía que reservar el referido puesto en virtud del Art. 5(a) de la Ley de Compensaciones, *supra*. Incluso, la Sra. Santos no solicitó su reinstalación dentro de dicho término. Por lo tanto, la Sra. Santos no tenía derecho a reclamar bajo el Art. 5(a) de la Ley de Compensaciones, *supra*.

---

[22] Como veremos más adelante, la omisión del patrono de informar el accidente ocurrido puede dar lugar a una causa de acción bajo el Art. 1802 del Código Civil, *supra*, si ello tiene el efecto de que el obrero no reciba los beneficios provistos por la Ley de Compensaciones, *supra*. *Alonso García v. Comisión Industrial*, supra, pág. 753; *Torres v. Municipio*, supra, págs. 717-718.

[23] Aunque el TPI estimó como hecho no controvertido el que Lederle no informó a la Sra. Santos de sus derechos específicos referentes al Fondo, ésta, por lo menos desde el 18 de marzo de 1993 –fecha en que fue donde el Dr. Bossolo–, tenía conocimiento del Fondo y muy bien pudo haber acudido ante el mismo, pese a la renuencia de Lederle de referirla. Véase, Sec. 5 del Reglamento sobre Derechos de Obreros y Empleados, 11 R.P.R. sec. 300.252; Orden Administrativa Núm. 87-18 del Fondo.

De igual forma, conforme a lo antes expresado, el referido artículo no cobijaba a la Sra. Santos porque ésta acudió al Fondo posterior a su despido. El 17 de mayo de 1995 Lederle declaró vacante la plaza que ocupaba la Sra. Santos, quien se reportó al Fondo el 22 de junio de 1995. Es decir, al momento de acudir al Fondo, no existía el vínculo obrero-patronal necesario entre la Sra. Santos y Lederle.

En vista de lo anterior, erró el TCA al determinar que la Sra. Santos, al amparo del Art. 5(a) de la Ley de Compensaciones, *supra*, tenía derecho a la reserva de empleo.

V

Por otra parte, Lederle aduce que el TCA actuó incorrectamente al determinar que la Sra. Santos tenía una causa de acción bajo el Art. 1802 del Código Civil, *supra*, por su [de Lederle] omisión de informar el accidente ocupacional al Fondo. Le asiste la razón.

En *Torres v. Municipio*, supra, reconocimos la existencia de una causa de acción por la omisión del patrono en informarle al Fondo la ocurrencia de un accidente. Ello fue reiterado en *Alonso García v. Comisión Industrial*, supra, donde dispusimos lo siguiente:

> [n]o hacerlo [presentar un informe escrito al Administrador del Fondo dentro de los cinco (5) días siguientes a la ocurrencia del accidente], además de constituir un delito bajo dicho artículo, es base para una acción civil del obrero contra el patrono si ello tiene el efecto de privarle de los beneficios dispuestos en la Ley. Véase, *Torres v. Municipio de Ponce*, 62 D.P.R. 711 (1943). (Bastardillas en el original.)

Esta causa de acción tiene como propósito el que el obrero perciba los beneficios provistos por la Ley de Compensaciones, *supra*, los cuales no recibió debido a la tardanza u omisión del patrono en cumplimentar el informe correspondiente reportando la ocurrencia del accidente.

Un obrero que presente una causa de acción bajo este supuesto debe alegar y probar los siguientes: (1) que le notificó a su patrono el accidente ocurrídole; (2) que reportó dicho accidente al Fondo; (3) que el Fondo le denegó la compensación porque el patrono no informó el accidente o porque no explicó satisfactoriamente su tardanza en presentarse al Fondo; y (4) que apeló la denegatoria del Fondo. *Torres v. Municipio*, supra.[24]

---

[24] Cabe mencionar que allí expresamos que:

> un obrero que alegue su falta absoluta de culpa en dejar de presentarse al médico del Fondo y que a pesar de esto no ha podido obtener compensación por el hecho fundamental de no haber su patrono informado el accidente, su demanda al efecto alegaría hechos suficientes. *Torres v. Municipio*, supra, págs. 717-718.

Aplicando dichos requisitos al caso de autos, colegimos que, pese a notificar el accidente luego del término de cinco (5) días, la Sra. Santos cumple con los primeros dos, mas no así con los otros requisitos señalados ya que recibió los beneficios por parte del Fondo. Por lo que, la Sra. Santos carecía de tal causa de acción.

En vista de lo anterior, erró el TCA al concluir que la Sra. Santos tenía derecho a dicha reclamación y, a su vez, al revocar al TPI, que determinó que los hechos no justificaban la concesión de un remedio.

VI

Por los fundamentos antes expuestos, se dicta sentencia revocando la emitida por el Tribunal de Circuito de Apelaciones el 30 de noviembre de 1998 y se dejan en vigor las pronunciadas por el Tribunal de Primera Instancia, Sala Superior de Caguas, el 2 y el 29 de junio de 1998.

BALTASAR CORRADA DEL RÍO
JUEZ ASOCIADO

---

No obstante, entendemos que no es necesario que el obrero alegue "su falta absoluta de culpa." Ello debido a que en el supuesto de que exista negligencia por parte del obrero, la indemnización puede reducirse por la negligencia comparada de éste. No podemos perder de vista que resolvimos este caso previo a la enmienda del 1956 al Art. 1802 del Código Civil, *supra*, la cual añadió que "[l]a imprudencia concurrente del perjudicado no exime de

**continúa...**

[24] **...continuación**

responsabilidad, pero conlleva la reducción de la indemnización."

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Lilliam Santos Berríos y otros

   Demandantes-Recurridos

             CC-1999-113

   v.

Lederle Piperacillin, Inc. y otros

   Demandados-Peticionarios

**SENTENCIA**

San Juan, Puerto Rico, a 17 de abril de 2001.

   Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta sentencia revocando la emitida por el Tribunal de Circuito de Apelaciones el 30 de noviembre de 1998 y se dejan en vigor las pronunciadas por el Tribunal de Primera Instancia, Sala Superior de Caguas, el 2 y el 29 de junio de 1998.

   Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita. El Juez Presidente señor Andréu García no intervino.


        Isabel Llompart Zeno
      Secretaria del Tribunal Supremo