RICHARD LARACUENTE SANTIAGO y YESENIA SÁNCHEZ MÉNDEZ, ETC., demandantes y peticionarios, *v.* PFIZER PHARMACEUTICALS, INC. y OTROS, demandados y recurridos.

*Número:* CC-2002-73        *Resuelto:* 15 de agosto de 2003

*Osvaldino Rojas Lugo*, abogado de Richard Laracuente y Yesenia Sánchez Méndez, peticionarios; *José J. Santiago Meléndez*, del bufete *Fiddler, González y Rodríguez*, abogados de Pfizer Pharmaceuticals, Inc., recurrida.

## SENTENCIA

En el caso de autos, el peticionario Richard Laracuente Santiago (Laracuente) sufrió un accidente de trabajo que eventualmente le requirió ausentarse de su empleo durante tres meses y tres semanas, por orden médica del Fondo del Seguro del Estado (Fondo).

Luego, Laracuente regresó a su trabajo para continuar las tareas de su puesto, conforme a una decisión del Fondo que le había ordenado recibir tratamiento mientras trabajaba. Sin embargo, su patrono se negó a reponerlo en el empleo y procedió a despedirlo.

Laracuente, su esposa y la sociedad de gananciales integrada por ellos presentaron ante el Tribunal de Primera Instancia, Sala Superior de Arecibo, una demanda por despido injustificado y por daños y perjuicios contra el patrono Pfizer Pharmaceuticals, Inc. y su compañía aseguradora.

Luego de los procedimientos de rigor, el 21 de septiembre de 2001 el foro de instancia dictó una sentencia y desestimó la demanda. El 21 de diciembre de ese mismo año el foro apelativo confirmó el dictamen del foro de instancia, por lo que los demandantes recurrieron ante nos.

El 1 de marzo de 2002 expedimos el recurso de *certiorari* solicitado.

Examinadas cuidadosamente las comparecencias de todas las partes a la luz del derecho aplicable, *se revocan las sentencias del Tribunal de Circuito de Apelaciones y del Tribunal de Primera Instancia en el caso de autos. Resolvemos que el despido de Laracuente fue ilícito. No había*

*transcurrido el término de reserva de empleo de doce meses que dispone el Art. 5–A de la Ley de Sistema de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 7. Se devuelve el caso al foro de instancia para que continúen los procedimientos conforme a lo resuelto aquí.*

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Rebollo López emitió una opinión concurrente. El Juez Asociado Señor Fuster Berlingeri emitió una opinión de conformidad, a la cual se unieron el Juez Presidente Señor Andréu García y la Jueza Asociada Señora Naveira de Rodón. El Juez Asociado Señor Hernández Denton emitió una opinión disidente, a la cual se unieron los Jueces Asociados Señores Corrada Del Río y Rivera Pérez.

(*Fdo.*) Patricia Otón Olivieri
*Secretaria del Tribunal Supremo*

— O —

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

El *1 de agosto de 1999* Richard Laracuente Santiago —no hay duda— sufrió un *"accidente del trabajo"* mientras realizaba tareas de cambio de filtro en uno de los equipos de la compañía recurrida, Pfizer Pharmaceuticals, Inc. (Pfizer).[1] *En ese momento sintió un dolor punzante en la espalda baja.* A pesar de ello, Laracuente siguió asistiendo a su trabajo por entender que no se trataba de algo grave; esto es, *no* se reportó al Fondo del Seguro del Estado (Fondo). Con motivo de que continuó sintiendo molestias en su espalda, Laracuente decidió visitar al Dr. Manuel Rodríguez, quien lo refirió a un neurólogo. Este último le recomendó a La-

---

[1] Esta tarea requería que el empleado mantuviera su torso inclinado sobre el equipo.

racuente que, en vista de que efectivamente había tenido un accidente y éste había ocurrido en su lugar de trabajo, debía reportarse al Fondo.

Acogiendo tal recomendación, el 13 de marzo de 2000 el peticionario se reportó al Fondo. El 27 de marzo dicha entidad concluyó que Laracuente debía recibir *tratamiento médico mientras trabajaba* (C.T.) en relación con el accidente del trabajo que había sufrido. En consecuencia, Laracuente continuó asistiendo a su trabajo hasta el *14 de abril de 2000*, fecha en que el Fondo emitió una *nueva decisión*, ordenándole a recibir *tratamiento en descanso.*

Posteriormente, el 4 de agosto de 2000 el Fondo ordenó que Laracuente recibiera tratamiento en C.T. Según se dispuso, dicha orden sería efectiva al *7 de agosto de 2000.* Ese día Laracuente se reportó a su trabajo; su patrono se negó a reponerlo en su empleo y procedió a despedirlo, alegando que ya había transcurrido el término de reserva de empleo —un (1) año— dispuesto en el Art. 5–A de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 7.

Ante la negativa del patrono de reponerlo en su empleo, Laracuente, su esposa Yesenia Sánchez Méndez y la sociedad de bienes gananciales compuesta por ellos instaron una demanda por daños y perjuicios, despido injustificado y lucro cesante ante el Tribunal de Primera Instancia, Sala Superior de Arecibo.[2] Pfizer presentó una solicitud de sentencia sumaria alegando, en síntesis, que el despido fue justificado ya que, a su entender, había transcurrido el término de reserva de empleo sin que el peticionario hubiese solicitado su reinstalación. Laracuente se opuso a dicha solicitud, aduciendo que el patrono pretendía interpretar de forma restrictiva lo dispuesto en el citado Art. 5–A con el fin de privarlo de su empleo.

Mediante Sentencia de 21 de septiembre de 2001, el foro

---

[2] Ello al amparo de la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185a *et seq.*).

de instancia *desestimó* en su totalidad la demanda incoada. Insatisfecho, Laracuente acudió en alzada ante el Tribunal de Circuito de Apelaciones, alegando que el Art. 5–A de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, *supra*, sólo aplica en aquellos "casos de inhabilitación para el trabajo". El foro apelativo intermedio, mediante Sentencia de 21 de diciembre de 2001, *confirmó* el dictamen del tribunal de instancia bajo el fundamento de que el término de doce meses que dispone el mencionado Art. 5–A para solicitar la reinstalación comienza a trascurrir desde la fecha del accidente y no desde que la víctima conoce que la lesión sufrida lo inhabilita para trabajar.

Inconforme con la actuación del tribunal apelativo intermedio, el demandante acudió —vía *certiorari*— ante este Tribunal. Alega que procede revocar la sentencia emitida por el tribunal apelativo debido a que dicho foro incidió:

> ... al dictar sentencia resolviendo sumariamente el presente litigio sin darle la oportunidad de ser oído a la parte demandante-peticionaria, a pesar de que existe una controversia bonafide que no debe resolverse mediante sentencia sumaria.
> ... al aplicar incorrectamente las normas jurídicas sobre el peso de la prueba en casos de despido.
> ... al dictar sentencia confirmando al Honorable Tribunal de Instancia, aplicando en forma restrictiva el Artículo 5A de la Ley de Compensaciones por Accidentes del Trabajo ignorando la política pública y la intención legislativa que consagra la interpretación liberal de la ley y la duda razonable a favor del trabajador o sus beneficiarios. Petición de *certiorari*, págs. 7–8.

El 1 de marzo de 2002 *expedimos* el recurso. Hoy una mayoría de los integrantes del Tribunal estima que resulta procedente revocar la decisión del Tribunal de Circuito de Apelaciones.

Concurrimos con dicho resultado. A continuación, exponemos los fundamentos jurídicos por los cuales estimamos correcta dicha actuación.

I

Sabido es que la Ley del Sistema de Compensaciones por Accidentes del Trabajo (Ley), Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 1 *et seq.*, constituye una legislación de carácter remedial que consagra ciertas garantías y beneficios al obrero que haya sufrido un accidente o una enfermedad ocupacional en el escenario del empleo. *Rivera v. Blanco Vélez Stores*, 155 D.P.R. 460 (2001); *Soc. de Gananciales v. Royal Bank de P.R.*, 145 D.P.R. 178, 194 (1998).

La referida ley crea un sistema de seguro compulsorio y exclusivo para compensar a los obreros y empleados que sufran lesiones, se inutilicen o mueran como consecuencia de accidentes ocurridos en sus trabajos o de enfermedades ocupacionales. *Rodríguez v. Méndez & Co.*, 147 D.P.R. 734, 739 (1999). La razón de ser de esta pieza legislativa emana de lo dispuesto en la Sec. 16 del Art. II de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, donde se reconoce el derecho que tiene todo trabajador a estar protegido contra riesgos a su salud en su lugar de trabajo. Véase 11 L.P.R.A. sec. 1a.

Entre las medidas estatuidas en este sistema de protección social se encuentra el Art. 5–A, ante. Éste garantiza tranquilidad de espíritu a todo trabajador que se inhabilita temporalmente como consecuencia de un accidente o una enfermedad ocupacional en la medida en que le impone al patrono la obligación de reinstalarlo en su empleo siempre que se cumplan los requisitos establecidos en la Ley. *Rivera v. Blanco Vélez Stores*, ante. El referido Art. 5–A dispone lo siguiente:

> En los *casos de inhabilitación para el trabajo* de acuerdo con las disposiciones de este capítulo, el patrono vendrá obligado a *reservar el empleo* que desempeñaba el obrero o empleado al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:
> (1) Que el obrero o empleado requiera al patrono para que

lo reponga en su empleo dentro del término de quince días, contados a partir de la fecha en que el obrero o empleado fuere dado de alta, y siempre y cuando que dicho requerimiento no se haga después de transcurridos doce meses desde la fecha del accidente;

(2) que el obrero o empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición; y

(3) que dicho empleo subsista en el momento en que el obrero o empleado solicite su reposición. (Se entenderá que el empleo subsiste cuando el mismo está vacante o lo ocupe otro obrero o empleado. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro obrero o empleado dentro de los treinta días siguientes a la fecha en que se hizo el requerimiento de reposición.)

Si el patrono no cumpliere con las disposiciones de esta sección vendrá obligado a pagar al obrero o empleado o a sus beneficiarios los salarios que dicho obrero o empleado hubiere devengado de haber sido reinstalado, además le responderá de todos los daños y perjuicios que le haya ocasionado. El obrero o empleado, o sus beneficiarios, podrán instar y tramitar la correspondiente reclamación de reinstalación y/o de daños en corte por acción ordinaria o mediante el procedimiento para reclamación de salarios, establecido en las secs. 3118 a 3132 del Título 32. (Énfasis suplido.)

La intención del legislador al promulgar el artículo antes citado fue proteger al empleado de la indeseable situación de que por haber sufrido un accidente del trabajo o contraído una enfermedad ocupacional, su patrono lo despida sin justa causa o que cuando regrese, una vez dado de alta, no tenga trabajo. *Rodríguez v. Méndez & Co.*, ante, pág. 741; *García v. Darex P.R., Inc.*, 148 D.P.R. 364, 377 (1999); *Vélez Rodríguez v. Pueblo Int'l, Inc.*, 135 D.P.R. 500, 513 (1994). De este modo, se le impone al patrono la obligación de reservarle al obrero el empleo en el que éste se desempeñaba al momento de ocurrir el accidente por un período de doce meses. Asimismo, se le reconoce al obrero el derecho a ser reinstalado en su puesto, si así lo solicita y si se satisfacen las otras condiciones dispuestas en la Ley. *García v. Darex P.R., Inc.*, ante, pág. 376; *Torres v. Star*

*Kist Caribe, Inc.*, 134 D.P.R. 1024, 1030 (1994); *Santiago v. Kodak Caribbean, Ltd.*, 129 D.P.R. 763, 769–770 (1992).

Claro está, la protección al empleado no es absoluta y el término de reserva no se extiende indefinidamente, sino que se circunscribe a un período de doce meses. *Rodríguez v. Méndez & Co.*, ante, pág. 741; *Santiago v. Kodak Caribbean, Ltd.*, ante, pág. 770. De esta manera, el legislador logró armonizar los intereses en conflicto al establecer un balance entre el interés del obrero en la seguridad económica que representa el poder regresar a su trabajo, una vez se recupere del accidente o enfermedad, y el interés del patrono en evitar la carga onerosa que conllevaría el tener que reservarle indefinidamente el empleo a aquellos obreros que se vean obligados a ausentarse por motivo de dicho accidente o enfermedad. *Santos et al. v. Lederle*, 153 D.P.R. 812 (2001); *Soc. de Gananciales v. Royal Bank de P.R.*, ante, pág. 199; *Santiago v. Kodak Caribbean, Ltd.*, ante, págs. 770–771.

Tenemos pues, que del texto claro de la aludida disposición estatutaria y de su jurisprudencia interpretativa surge que *la reserva de empleo no operará en todo caso, sino únicamente cuando se satisfagan ciertos requisitos indispensables.* En reiteradas ocasiones este Tribunal los ha enumerado; éstos son: (1) *que el accidente o enfermedad ocupacional inhabilite al empleado para trabajar*; (2) que el empleado se acoja a los beneficios del Fondo; (3) que dentro de los quince días de haber sido dado de alta definitivamente, autorizado a trabajar por el Fondo, el empleado solicite al patrono su reposición en su empleo; (4) que dicho requerimiento de reposición se haga dentro de los doce meses de haber ocurrido el accidente o enfermedad; (5) que al solicitar su reposición el empleado esté mental y físicamente capacitado para desempeñarse en las funciones del empleo que ocupaba, y (6) que dicho empleo subsista al momento en que el trabajador solicita su reinstalación. *Torres v. Star Kist Caribe, Inc.*, ante, pág. 1030.

Sin lugar a dudas, de estos criterios *el requisito de umbral es el primero*; esto es, *que el accidente o enfermedad ocupacional haya tenido el efecto de inhabilitar al empleado para trabajar.* Si este requisito no se satisface de nada vale que se cumpla con todos los demás. Ciertamente esta exigencia recoge la razón de ser de la disposición legislativa bajo estudio. Ante un accidente o enfermedad ocupacional que no inhabilite al empleado, la aplicabilidad de lo dispuesto en este articulado *no* tiene sentido.

La importancia de determinar si estamos ante un empleado inhabilitado para trabajar surge del propio texto del referido artículo, cuando al comienzo de éste se dispone que "[e]n los *casos de inhabilitación para el trabajo* ... el patrono vendrá obligado a *reservar el empleo* que desempeñaba el obrero o empleado al momento de ocurrir el accidente y a reinstalarlo en el mismo ...". (Énfasis suplido.) Art. 5–A, ante. *Adviértase* que no es sino luego de exponer este criterio inicial que el legislador procede a enumerar el resto de las condiciones que *también* deberán cumplirse, *lo cual evidencia la intención clara de la Asamblea Legislativa de imprimirle al requisito de inhabilidad un carácter prioritario.* Hemos de recordar que cuando el legislador se ha manifestado en un lenguaje claro e inequívoco, el texto de la ley debe ser la expresión por excelencia de la intención legislativa. *Alejandro Rivera v. E.L.A.*, 140 D.P.R. 538, 545 (1996); *Atiles, Admor. v. Comisión Industrial*, 77 D.P.R. 16, 20 (1954).

En reiteradas ocasiones la jurisprudencia de este Tribunal ha enfatizado la relevancia de este requisito. Basta con referirnos a algunos de nuestros pronunciamientos anteriores.

En *Alvira v. SK & F Laboratories Co.*, 142 D.P.R. 803, 814 (1997), refiriéndonos específicamente a este Art. 5–A, señalamos que "lo que requiere es que la enfermedad que sufra el empleado lo *inhabilite* para trabajar y que concurran las demás condiciones ya expresadas". (Énfasis en el

original.) Del mismo modo, en *García v. Darex P.R., Inc.*, ante, pág. 379, señalamos que

> ... el Art. 5a obliga al patrono a reservar el empleo de su obrero enfermo o lesionado por un periodo ininterrumpido de doce (12) meses, *a contarse desde la fecha en que ocurre la lesión que lo inhabilita.* (Énfasis suplido.)

Otro ejemplo de la importancia del requisito de la inhabilidad lo encontramos en *Cuevas v. Ethicon Div. J&J Prof. Co.*, 148 D.P.R. 839, 845–846 (1999), donde expresamos que el Art. 5–A "es de carácter especial; es decir, se refiere *únicamente* a aquellos casos en que el trabajador sufre un accidente de trabajo o una enfermedad del trabajo *que lo inhabilita*". (Énfasis suplido.) Véase, además, *Rivera v. Blanco Vélez Stores*, ante.

Vemos, pues, que una correcta interpretación del Art. 5–A exige que en todo caso en que esté en controversia la aplicación de la reserva de empleo allí dispuesta deberá determinarse, *en primer lugar*, si el accidente o enfermedad ocupacional *inhabilitó al obrero* para ejecutar las funciones que hasta ese momento ejercía. Si es así, entonces, *y sólo entonces*, es que procederá la evaluación de las demás condiciones. *Ahora bien*, si por el contrario, el accidente o enfermedad ocupacional no ha tenido el efecto de inhabilitar al obrero, el análisis de los requisitos establecidos en el Art. 5–A concluye y no quedará otra alternativa que no sea concluir que la reserva de empleo allí dispuesta *no es de aplicación. Ciertamente, esto es lo más razonable, pues si el obrero está hábil para trabajar y acude diariamente a su empleo, entonces, ¿qué sentido tendría reservárselo?*

La interpretación antes expuesta *no* es de nueva cuña. En *Rodríguez v. Méndez & Co.*, ante, pág. 744, este Tribunal resolvió que para que se active la protección del Art. 5–A "debe tratarse 'de un accidente o enfermedad ocupacional que *inhabilite* al obrero para trabajar y que por razón de dicha inhabilidad para trabajar, el obrero se haya reportado al Fondo y haya recibido tratamiento médico *en*

*descanso* por el Fondo'". (Énfasis en el original suprimido y énfasis suplido.) Del mismo modo, señalamos que el periodo de reserva sólo aplica a "aquellos empleados que se incapacitan temporalmente por causa de un accidente del trabajo y que, por tal razón, *no pueden asistir a sus empleos*". (Énfasis suplido.) Íd., pág. 743. *En virtud de lo antes expuesto, resolvimos en dicho caso que la reserva de empleo que dispone el citado Art. 5-A no aplica a aquellos obreros a quienes el Fondo les ordene recibir tratamiento mientas trabajan (C.T.).* De este modo, establecimos la *norma* para que mientras un empleado se encuentre en C.T. *no* surja la obligación del patrono de reservarle su empleo.(3) *Esta obligación surge tan pronto como el Fondo autoriza al empleado a ausentarse y a recibir tratamiento médico "en descanso".*(4)

Adviértase que, a pesar de que en el precitado caso no nos expresamos específicamente en torno al momento en que debe comenzar a calcularse el término de doce meses de la reserva de empleo, *lo allí resuelto ciertamente modificó los pronunciamientos anteriores de este Tribunal en cuanto a dicho asunto.* Hasta entonces habíamos interpretado que los doce meses de la reserva de empleo debían comenzar a contarse desde la fecha del accidente o enfermedad, independientemente de que el empleado estuviese o no hábil para trabajar y aunque el Fondo no le hubiese ordenado tratamiento "en descanso".(5) Resulta patentemente claro que dicha posición es incompatible con lo dispuesto en *Rodríguez v. Méndez & Co.*, ante, a los efectos de

---

(3) Cabe resaltar que en dicho caso la empleada siempre estuvo recibiendo tratamiento mientras trabajaba (C.T.); esto es, el Fondo nunca le ordenó "descanso".

(4) Esta norma fue recientemente reiterada en el caso *Rivera v. Blanco Vélez Stores*, 155 D.P.R. 460 (2001).

(5) Véanse: *Santos et al. v. Lederle*, 153 D.P.R. 812 (2001); *García v. Darex P.R., Inc.*, 148 D.P.R. 364, 376 (1999); *Cuevas v. Ethicon Div. J&J Prof. Co.*, 148 D.P.R. 839, 851 (1999); *Soc. de Gananciales v. Royal Bank de P.R.*, 145 D.P.R. 178, 199 (1998); *Alvira v. SK & F Laboratories Co.*, 142 D.P.R. 803, 814 (1997); *Torres v. Star Kist Caribe, Inc.*, 134 D.P.R. 1024, 1032-33 (1994); *Vélez Rodríguez v. Pueblo Int'l, Inc.*, 135 D.P.R. 500, 514 (1994); *Carrón Lamoutte v. Compañía de Turismo*, 130 D.P.R. 70, 78 (1992).

que el Art. 5–A, y por consiguiente la reserva de empleo allí dispuesta, *no se activa hasta el momento en que el Fondo le ordena al empleado tratamiento "en descanso"*. No debe haber duda alguna en torno al hecho de que si la protección de la reserva de empleo no se ha activado es imposible que pueda comenzar a contarse el término de doce meses de su duración.

Ahora bien, a pesar de lo antes expuesto, y a tres meses de resuelto el caso *Rodríguez v. Méndez & Co.*, ante, en *Cuevas v. Ethicon Div. J & J Prof. Co.*, ante, y aun cuando expresamos en dicho caso que el Art. 5–A "es de carácter especial, es decir, que se refiere *únicamente* a aquellos casos en que el trabajador sufre un accidente de trabajo o una enfermedad del trabajo *que lo inhabilita*", *inexplicablemente*, resolvimos que la fecha a partir de la cual debe computarse el periodo de reserva que exige este artículo es el momento en que ocurre el accidente, independientemente de si en esa fecha surgió o no la inhabilidad.[6] No obstante, al ser dicho resultado incompatible con lo que anteriormente se había expresado en el caso —razón por la cual constituye "mala jurisprudencia"— éste ha provocado que al día de hoy exista confusión en nuestra jurisdicción en cuanto al momento en que comienza a transcurrir el término de reserva de empleo: esto es, existe una posición a los efectos de que se contará desde la fecha del accidente o enfermedad ocupacional, y otra que postula que éste comenzará a transcurrir desde que el obrero se inhabilita y el Fondo le ordena descanso.

La referida situación, *indeseable por demás*, no puede tener otro efecto que no sea el de *confundir totalmente*, no sólo a nuestros tribunales de instancia y a la clase profesional, sino también a los patronos y obreros de nuestro país; situación que, en lugar de promover la simplificación

---

[6] Debemos reconocer que el juez suscribiente, *de forma igualmente inexplicable*, suscribió la opinión emitida en *Cuevas Santiago v. Ethicon Div. J & J Prof. Co.*, ante. Al así hacerlo cometimos un error, el cual hoy intentamos corregir.

de las controversias obrero-patronales, tiene el efecto de aumentar y complicar considerablemente la actividad litigiosa en esta área del derecho. Somos del criterio que los integrantes de este Tribunal tenemos el *deber ineludible* de adoptar, de una vez y por todas, la norma que mejor refleja la letra y el propósito de la Ley.

## II

Como señaláramos anteriormente, la Ley claramente establece un *requisito de umbral* para que opere la reserva de empleo: *que el accidente o enfermedad ocupacional inhabilite al empleado para trabajar.* Si comenzamos a contar el término de doce meses de la reserva de empleo que dispone el Art. 5–A a partir de la fecha del accidente o enfermedad ocupacional, *estaríamos ignorando por completo el requisito de inhabilidad que exige la ley y atribuyendo a dicha disposición una interpretación fragmentada.*[7] Dicha interpretación estaría en conflicto con el propósito perseguido por el legislador al promulgar la Ley, que era, precisamente, crear un balance entre el interés del obrero en retener su empleo y el del patrono en evitar el disloque total de su actividad empresarial por estar obligado a congelar un sinnúmero de plazas por un periodo irrazonablemente largo de tiempo. *Soc. de Gananciales v. Royal Bank de P.R.*, ante, pág. 199. Veamos.

Si la inhabilidad coincide con la fecha de ocurrencia del accidente, no hay duda de que el término de la reserva de empleo deberá comenzar a contarse desde ese momento. Ahora bien, habrá ocasiones en que el accidente ocurra y,

---

[7] Recordemos que las reglas de hermenéutica legal nos exigen interpretar las leyes considerando su razón y espíritu, examinando y comparando sus partes de suerte que sean hechas consecuentes y tengan efecto. Para ello, deben interpretarse las diferentes secciones, las unas en relación con las otras, completando o supliendo lo que falte o sea oscuro en una con lo dispuesto en la otra, procurando siempre dar cumplimiento al propósito del legislador. *P.N.P. y P.I.P. v. Rodríguez Estrada*, 122 D.P.R. 490, 500 (1988).

sin embargo, la inhabilidad del obrero no se presente hasta un momento posterior. En tales casos, si contáramos el término de reserva de empleo a partir de la fecha del accidente y no desde la fecha en que el Fondo le autorice al empleado tratamiento en descanso —cual es la fecha de "inhabilidad"— *no sólo estaríamos ignorando el claro propósito de la ley, sino que, además, se crearía la anómala situación de que el patrono estaría reservándole el empleo a un trabajador que diariamente ha continuado asistiendo a él.*[8]

Ciertamente, el propósito perseguido por la Ley no puede ser reservarle el empleo a un obrero que, luego del accidente o enfermedad, continúa asistiendo regularmente a su empleo, sino a aquel que por motivo de dicho evento ha tenido que ausentarse de su empleo por encontrarse inhabilitado para trabajar.[9]

Si comenzamos a contar el término de reserva de empleo a partir de la fecha en que el Fondo autoriza al empleado a ausentarse de su empleo para recibir tratamiento "en descanso" —cónsono con lo resuelto en *Rodríguez v. Méndez & Co.*, ante, a los efectos de que la referida reserva no se activa hasta ese momento— estaríamos atribuyendo a la disposición bajo análisis una interpretación lógica que coincide con su propósito. De esta forma, además, se consideraría que el patrono no está obligado a reservarle el em-

---

[8] No sólo es injusto, sino, además, contrario al propósito remedial de la Ley del Sistema de Compensaciones por Accidentes del Trabajo el que a un empleado que ha continuado ejerciendo sus funciones para el patrono bajo C.T., y al que posteriormente el Fondo le ordene tratamiento en descanso, le comience a contar el término de reserva de empleo retroactivamente a la fecha del accidente. *De ello suceder, es muy probable que al momento en que se le ordene el descanso el obrero ya no tenga derecho a la reserva de empleo porque hayan transcurrido los doce meses desde la fecha del accidente aun cuando nunca haya tenido que ausentarse para recibir el tratamiento ordenado.*

[9] Precisamente, se ha comentado que "[l]a Ley de Compensaciones por Accidentes del Trabajo dispone beneficios económicos para los trabajadores que han sufrido un accidente, enfermedad o padecimiento ocupacional y como consecuencia de esto *se han incapacitado para trabajar, por lo que se han visto forzados a ausentarse de su empleo*". (Énfasis suplido.) A. Acevedo-Colom, *Legislación Protectora del Trabajo Comentada*, 7ma ed. rev., San Juan, [s. Ed.], 2001, pág. 366.

pleo a aquellos obreros quienes, por estar en C.T., continúan asistiendo diariamente a su trabajo.([10])

En virtud de lo antes expuesto, entendemos procedente adoptar no sólo la interpretación que claramente se desprende del texto de la ley, sino la más justa y lógica, esto es, la que surge de lo resuelto en *Rodríguez v. Méndez & Co.*, ante, a los efectos de que el término de reserva de un año establecido en el precitado Art. 5–A comienza a contarse a partir de la fecha en que el obrero se inhabilita y el Fondo le ordena descanso.

## III

Dentro del marco doctrinario previamente esbozado es que debemos evaluar la presente controversia. En el caso de marras el *accidente* sufrido por Laracuente ocurrió el *1ro de agosto de 1999.* Aun cuando éste estuvo recibiendo asistencia médica durante varios meses, no fue hasta el 13 de marzo de 2000 que acudió al Fondo donde se le ordenó recibir tratamiento mientras trabajaba (C.T.).([11]) De acuerdo con la norma previamente esbozada, durante este periodo de tiempo la reserva de empleo que dispone el Art. 5–A *no* había entrado en vigor, lo cual indica que el término de doce meses no había comenzado a transcurrir. Posteriormente, el *14 de abril de 2000* el Fondo le ordenó a Laracuente tratamiento en descanso. Fue a partir de este momento en que se activó la protección de reserva de empleo que contempla la aludida disposición legal. Habiéndose activado en ese momento la reserva de empleo, es evidente que el término de duración comenzó a transcurrir a partir de esa fecha.([12]) Al ser así, queda claro que al *7 de*

---

([10]) Dicha interpretación de modo alguno podría constituir una carga onerosa para el patrono ni podría afectar sus intereses económicos toda vez que el empleado ha continuado ofreciéndole sus servicios.

([11]) La referida orden fue emitida el 27 de marzo de 2000.

([12]) Cabe señalar que, a pesar de que posteriormente —el 4 de agosto 2000— el Fondo ordenó que Laracuente recibiera tratamiento en C.T., ello no tuvo el efecto de

*agosto de 2000,* fecha en que Laracuente se reportó a su empleo y fue despedido, todavía no había transcurrido el término de caducidad de doce meses (360 días) de la reserva de empleo.

En virtud de lo anterior, forzosa resulta ser la conclusión de que Laracuente fue despedido en contravención con lo dispuesto en el Art. 5–A de la Ley, ante. Por lo tanto, no cabe duda que ambos foros inferiores erraron al desestimar la demanda incoada.

## IV

Habiendo concluido de este modo, resulta obvio que estamos impedidos de suscribir, y endosar con nuestro voto, cualquiera de las otras dos ponencias certificadas en el caso de autos. *Veamos por qué.* Si nos referimos, en primer lugar, a la opinión disidente emitida por el Juez Asociado Señor Hernández Denton, resulta suficiente señalar que éste resuelve la controversia planteada, a nuestro juicio de forma incorrecta, apoyándose en la interpretación del Art. 5–A que, por los fundamentos antes expuestos, hemos entendido que debe ser descartada.

En cuanto a la opinión emitida por el Juez Asociado Señor Fuster Berlingeri —ponencia que es suscrita por otros dos integrantes del Tribunal— debemos señalar que aun cuando obviamente concurrimos con el resultado al que éste llega, nos resulta imposible suscribir el razonamiento *inútil* y *enrevesado* que se utiliza para llegar a éste. Veamos.

Es de advertirse que, en su ponencia, el Juez Fuster Berlingeri recurre a la jurisprudencia y análisis que en torno a las llamadas *long-latency injuries* se ha desarrollado en la jurisdicción norteamericana para justificar su conclusión de que la reserva de empleo debe computarse

---

interrumpir el término de doce meses establecido en el Art. 5–A, 11 L.P.R.A. sec. 7, ya que este periodo es un periodo de caducidad que no puede interrumpirse de forma alguna. *Torres v. Star Kist Caribe, Inc.,* ante, pág. 1036.

desde que se conoce que la lesión o accidente es incapacitante. Ciertamente, sorprende que el distinguido Magistrado se enfrasque en tan fútil análisis sin advertir que tal doctrina está implícitamente plasmada en el propio texto de la Ley bajo estudio\ y que ésta ya ha sido avalada por la jurisprudencia de este Tribunal.

Como hemos señalado, el Art. 5–A de esta Ley impone el hecho de la inhabilidad como un requisito sine qua non para que entre en vigor el beneficio de la reserva de empleo. Ello significa que, *al igual que se plantea bajo la doctrina de "long-latency injuries"*, el momento a partir del cual debe comenzar a contarse el término de reserva que establece este artículo es desde que la lesión o accidente se torna tan grave que resulta en la inhabilidad del obrero para trabajar. Esto es precisamente lo que esboza el Juez Fuster Berlingeri en su ponencia, aunque para ello utiliza un término "foráneo" y "florido".

A nuestro juicio este erróneo proceder se debe a que el Juez Fuster Berlingeri, tras una lectura *incompleta* del texto de este artículo, entiende que éste "sólo dispone que el término de la reserva de empleo en cuestión comienza a transcurrir 'desde la fecha del accidente' ", ignorando por completo el hecho de que en el referido artículo se menciona, *además*, el requisito de la inhabilidad en su primera oración. Es de advertir que este criterio se establece como *requisito principal* para la aplicación de la reserva de empleo.

No podemos suscribir, en consecuencia, el acto de *malabarismo jurídico* que realiza el Juez Fuster Berlingeri, al enfrascarse en un análisis de la doctrina desarrollada en torno a las llamadas *long-latency injuries*, cuando lo único que requería el presente caso era un análisis sosegado y lógico del texto claro de la disposición legal aquí en controversia.

— o —

Opinión de conformidad emitida por el Juez Asociado Señor Fuster Berlingeri, a la cual se unen el Juez Presidente Señor Andréu García y la Jueza Asociada Señora Naveira de Rodón.

Tenemos la ocasión para precisar cuándo comienza a correr el año durante el cual un patrono está obligado a reservar el empleo que desempeñaba un obrero que advino inhabilitado para trabajar por razón de un accidente o enfermedad laboral, según lo dispuesto por el Art. 5–A de la Ley del Sistema de Compensaciones por Accidentes del Trabajo (Ley), 11 L.P.R.A. sec. 7.

I

El peticionario Richard Laracuente Santiago (peticionario o Laracuente) comenzó a trabajar para la empresa Pfizer Pharmaceuticals, Inc. (Pfizer) el 22 de junio de 1993, donde se desempeñó con distinción y esmero. Entre otros reconocimientos, recibió un certificado de la empresa que le reconocía haber tenido una *asistencia perfecta* a su trabajo durante *1998.*

El 1 de agosto de 1999, mientras Laracuente realizaba unas tareas de cambio de filtro que le requerían trabajar con su torso inclinado encima de uno de los equipos de la compañía, sintió un dolor punzante en la parte baja de la espalda. Al día siguiente, el empleado sintió más molestias en la espalda, por lo que acudió a un médico particular para la consulta correspondiente. El médico referido le diagnóstico un *espasmo muscular* y le ordenó unas sesiones de terapia física. También lo envió a realizarse un MRI. *Laracuente continúo trabajando por entender que no se trataba de un asunto serio.*

Meses más tarde, Laracuente llevó los resultados del MRI a otros médicos *relacionados con el patrono* y de ello

surgió que el empleado tenía un disco herniado. Uno de estos médicos le indicó a Laracuente que su condición *no era nada grave*. Otro le recomendó a Laracuente que acudiera ante el Fondo del Seguro del Estado (Fondo). Laracuente intentó hacerlo, pero encaró dificultades y demoras para lograr que el empleado del patrono a cargo de referir su caso al Fondo lo hiciese.

Así las cosas, el 13 de marzo de 2000 Laracuente al fin pudo acudir al Fondo. El 27 de marzo de 2000 el Fondo, mediante la autorización de uno de sus médicos, determinó, que Laracuente padecía de una lesión *que requería tratamiento mientras trabajaba*. El peticionario continuó trabajando como lo había estado haciendo antes, hasta el 14 de abril de 2000, cuando el Fondo, mediante la autorización de *otro médico suyo*, modificó la decisión anterior y ordenó que Laracuente *recibiera tratamiento en descanso*.

El 4 de agosto de 2000 el Fondo emitió una tercera tratamiento mientras trabajaba, efectiva el 7 de agosto de 2000. En la referida fecha de efectividad, Laracuente se presentó a su trabajo para continuar las tareas de su puesto, pero el patrono se negó a reponerlo en su posición y procedió a despedirlo, *aunque el empleado sólo llevaba tres meses y tres semanas ausente por las órdenes médicas del Fondo*.

El 21 de junio de 2001 Laracuente, su esposa Yesenia Sánchez y la sociedad de gananciales integrada por ellos presentaron ante el Tribunal de Primera Instancia, Sala Superior de Arecibo, una demanda por despido injustificado, al amparo de la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185(a)) y por daños y perjuicios contra Pfizer y contra su compañía aseguradora. El 17 de julio de 2001 Pfizer contestó la demanda referida y alegó que el despido había estado justificado porque Laracuente había agotado la reserva de empleo que la Ley reconocía en estos casos de accidentes del trabajo. A su vez, Pfizer presentó una moción de sentencia sumaria fundada en que el

derecho de reinstalación del empleado había caducado, por lo que el despido estuvo justificado. El 4 de septiembre de 2001 Laracuente se opuso a dicha solicitud de sentencia sumaria.

El 21 de septiembre de 2001 el Tribunal de Primera Instancia dictó una sentencia y desestimó la demanda contra Pfizer, por entender que el empleado había solicitado la reinstalación en su trabajo pasado el término de doce meses posteriores al accidente, por lo que la reserva de empleo que dispone la Ley había caducado.

Inconforme con dicha determinación, los demandantes acudieron ante el Tribunal de Circuito de Apelaciones y solicitaron la revocación de la sentencia emitida por el decisión mediante la cual ordenó a Laracuente a recibir Tribunal de Primera Instancia. El 21 de diciembre de 2001 el Tribunal de Circuito de Apelaciones confirmó la sentencia del foro de instancia, por el mismo fundamento de ésta.

Por no estar de acuerdo con dicha determinación, los demandantes peticionarios recurrieron ante nos mediante un recurso de *certiorari* y plantearon los señalamientos de error siguientes:

> 1.   Incidió en error manifiesto el Honorable Tribunal de Instancia, Sala Superior de Arecibo, Puerto Rico[,] al dictar sentencia resolviendo sumariamente el presente litigio sin darle la oportunidad de ser oído, a la parte demandante-peticionaria, a pesar de que existe una controversia bonafide que no se debe resolver mediante sentencia sumaria.
> 2.   Incidió en error manifiesto el Honorable Tribunal de Instancia, Sala Superior de Arecibo, Puerto Rico, al aplicar incorrectamente las normas jurídicas sobre el peso de la prueba en casos de despido.
> 3.   Incidió en error de derecho el Honorable Tribunal de Circuito de Apelaciones, supra, al dictar sentencia confirmando al Honorable Tribunal de Instancia, aplicando en forma restrictiva el Artículo 5A de la Ley de Compensaciones por Accidentes del Trabajo ignorando la política pública y la intención legislativa que consagra la interpretación liberal de la

ley y la duda razonable a favor del trabajador o sus beneficiarios. Petición de *certiorari*, págs. 7–8.

El 1 de marzo de 2002 expedimos el recurso solicitado a fin de revisar la sentencia del foro apelativo de 21 de diciembre de 2001. Luego de concedérsele una prórroga, la parte peticionaria presentó su alegato el 19 de junio de 2002, y la parte recurrida el suyo el 27 de junio de 2002. Con el beneficio de ambas comparecencias, pasamos a resolver.

## II

En esencia, según Laracuente, el término de doce meses dispuesto en el Art. 5–A de la Ley, *supra*, comenzó a transcurrir desde el 13 de marzo de 2000, cuando por primera vez acudió al Fondo del Seguro de Estado, y no desde la fecha en que alegadamente ocurrió el accidente. Veamos si tiene razón.

El Art. 5–A de la Ley, *supra*, dispone lo siguiente:

> En los casos de inhabilitación para el trabajo de acuerdo con las disposiciones de este capítulo, el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero o empleado al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a las siguientes condiciones;
> (1) Que el obrero o empleado requiera al patrono para que lo reponga en su empleo dentro del término de quince días, contados a partir de la fecha en que el obrero o empleado fuere dado de alta, y siempre y cuando que dicho requerimiento no se haga después de transcurridos doce meses *desde la fecha del accidente*;
> (2) que el obrero o empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición; y
> (3) que dicho empleo subsista en el momento en que el obrero o empleado solicita su reposición. (Énfasis suplido.)

A. El referido Art. 5–A de la Ley ha sido objeto de muchas interpretaciones por este Tribunal. Así pues, hemos resuelto reiteradamente que dicha disposición establece el

derecho del trabajador que está inhabilitado por una lesión o enfermedad a que durante un período de doce meses su plaza laboral esté reservada, para permitirle que pueda recuperarse sin temor a ser despedido.

*La reserva de doce (12) meses logra que el obrero no tenga que enfrentarse a la incertidumbre indeseable de que por haber sufrido un accidente de trabajo su patrono lo despida, a la vez que promueve un ambiente de tranquilidad en el cual el obrero puede recuperarse con mayor celeridad.* (Énfasis suplido.) *García v. Darex P.R., Inc.*, 148 D.P.R. 364, 377 (1999).

Debe destacarse que, según hemos resuelto, este derecho a la reserva del empleo del obrero que se incapacita temporalmente no sólo tiene su raíz en la Constitución del Estado Libre Asociado de Puerto Rico, sino que, además, "constituye el eje central de todo el esquema jurídico establecido por el Estado para la protección del obrero en su taller de trabajo". *Cuevas v. Ethicon Div. J&J Prof. Co.*, 148 D.P.R. 839, 845 (1999).

No obstante su elevada jerarquía, el derecho a la reserva del empleo del trabajador inhabilitado por una lesión o enfermedad no es ilimitado. No existe una reserva de empleo indefinida, en vista de que dicha reserva está limitada a sólo doce meses. *Santos et al. v. Lederle*, 153 D.P.R. 812 (2001); *Torres v. Star Kist Caribe, Inc.*, 134 D.P.R. 1024, 1033 (1994); *Carrón Lamoutte v. Compañía de Turismo*, 130 D.P.R. 70, 78 (1992).

Como se sabe, el referido derecho a la reserva del empleo tenía originalmente una duración de seis meses. Ley Núm. 48 de 18 de abril de 1950, Leyes de Puerto Rico, pág. 127. En 1973 el término fue aumentado a doce meses. El legislador dispuso este término más extenso por considerar que el plazo original era muy corto debido a que en un gran número de casos el proceso de recuperación de obreros inhabilitados por accidentes o enfermedades del trabajo se extendía por períodos mayores de seis meses. Véase *Torres v. Star Kist Caribe, Inc.*, supra, págs. 1031–1033.

De todo lo anterior se desprende que el medular derecho a la reserva de empleo *no dura más de doce meses ni menos de ese tiempo.*

B.   El Art. 5–A referido dispone que el obrero que había estado inhabilitado y se recupera habrá de solicitar su reinstalación al empleo que tenía antes dentro de los doce meses *desde la fecha del accidente.* De ordinario, pues, el término de la reserva de empleo comienza a transcurrir a partir de la fecha del accidente. Ello se basa en la experiencia común de que el obrero que sufre un accidente serio queda inhabilitado por dicho accidente. *La fecha del accidente y de la inhabilidad causada por éste son la misma, ordinariamente.* De esta forma, el "suceso inesperado y súbito, de lugar y fecha definidos", que ocasiona la inhabilidad, es el punto de partida corriente para determinar el año de reserva de empleo. Véase *Alonso García v. Comisión Industrial,* 102 D.P.R. 689, 695–696 (1974).

No obstante, hay ocasiones en que el término en cuestión comienza a transcurrir, no a partir de la fecha del "accidente", sino a partir de la fecha en que *el obrero acude al Fondo* porque está afectado por una *enfermedad* que le impide regresar al empleo. Ello sucede en aquellos casos en que la inhabilidad no es causada por un "accidente" de fecha precisa como tal, sino por una constatada *enfermedad ocupacional.* Es menester recordar aquí que la Ley que nos concierne se extiende no sólo a las lesiones que sufren los trabajadores por razón de accidentes laborales, sino también, más genéricamente a las *"enfermedades ... derivadas de la ocupación".* 11 L.P.R.A. sec. 2. Las varias protecciones que ofrece la Ley existen para el obrero o empleado que ha sufrido *"alguna lesión o enfermedad que ocurra en el curso del trabajo".* *Pacheco Pietri y otros v. E.L.A. y otros,* 133 D.P.R. 907, 914 (1993). Véanse, además: *Alonso García v. Comisión Industrial,* supra; *Hernández Nieves v. Comisión Industrial,* 90 D.P.R. 340 (1964). Es por lo anterior que en nuestra jurisprudencia hemos señalado reite-

radamente de modo expreso y claro que el Art. 5–A en cuestión "le impone la obligación [al patrono] de reservarle el empleo al obrero lesionado o *enfermo* por un período de doce (12) meses, *desde la ocurrencia* del accidente *o enfermedad*". (Énfasis suplido.) *García v. Darex P.R., Inc.*, supra, pág. 376. Al referirnos al período de la reserva de empleo hemos señalado en numerosas ocasiones que éste se cuenta a partir del momento en que ocurrió el accidente o *la enfermedad ocupacional. Rivera v. Blanco Vélez Stores*, 155 D.P.R. 460 (2001); *Santos et al. v. Lederle*, supra; *Cuevas v. Ethicon Div. J & J Prof. Co.*, supra; *García v. Darex P.R., Inc.*, supra; *Soc. de Gananciales v. Royal Bank de P.R.*, 145 D.P.R. 178, 199 (1998); *Alvira v. SK & F Laboratories Co.*, 142 D.P.R. 803, 814 (1997); *Vélez Rodríguez v. Pueblo Int'l, Inc.*, 135 D.P.R. 500, 514 (1994); *Torres v. Star Kist Caribe, Inc.*, supra. Véase, también, R. Delgado Zayas, *Manual informativo de legislación protectora del trabajo de Puerto Rico*, San Juan, [s. Ed.], 1989, pág. 301. Incluso, en *Rodríguez v. Méndez & Co.*, 147 D.P.R. 734, 740 (1999), expresamente resolvimos que el período de doce meses en cuestión son contados a partir del día del accidente del trabajo "*o desde la fecha en que el obrero se reporta al Fondo en los casos de enfermedades ocupacionales*".

De lo anterior resulta, pues, que aunque el texto del Art. 5–A referido sólo dispone que el término de la reserva de empleo en cuestión comienza a transcurrir "desde la fecha del accidente", *tal disposición no es tan taxativa como parece.* Más bien, como tantas veces sucede en Derecho, se trata de una disposición que debe interpretarse, y que ya antes hemos interpretado para ampliar su estricto significado textual, teniendo en consideración los fines que persigue la Ley. Le hemos dado a dicho Art. 5–A, *supra*, un significado que se ajusta a la política pública general de la cual forma parte. Lo hemos ampliado para que el periodo de reserva comience a transcurrir desde la fecha en que el obrero se reporta al Fondo en casos de enfermedades

ocupacionales. La referida ampliación del sentido literal del Art. 5–A la hemos hecho conforme a conocidos principios de hermenéutica que preceptúan que debemos interpretar las leyes evitando significados que ocasionan grandes inconvenientes o inequidad, prefiriendo en vez aquellos que sean más razonables y justos. *Vázquez v. A.R.Pe.*, 128 D.P.R. 513 (1991); *A.R.P.E. v. Ozores Pérez*, 116 D.P.R. 816 (1986); *Esso Standard Oil v. A.P.P.R.*, 95 D.P.R. 772 (1968).

El caso de autos también requiere que realicemos otra interpretación más del Art. 5–A, *supra*, que indicaremos más adelante, para darle una aplicación razonable y justa a dicho artículo en casos como el de autos.

C. También existen situaciones en las cuales un trabajador se inhabilita temporalmente como resultado de su empleo, *sin que pueda conocerse inicialmente la naturaleza precisa del daño sufrido por el obrero.* Tales situaciones han sido reconocidas por la crítica erudita y por varios Tribunales Supremos estatales norteamericanos. Se trata esencialmente de situaciones en las cuales la gravedad de la lesión sufrida por un trabajador *no se manifiesta de inmediato, o no es reconocida como tal de inmediato por el médico que examina al obrero.* En la eminente obra de A. Larson, *Larson's Workmen's Compensation*, Desk Edition, Nueva York, Ed. Matthew Bender Co., 1989, Vol. 2, Cap. 15, Secs. 78.41–78.42, se discute ampliamente estas llamadas *long-latency injuries*, para indicar que no se les puede aplicar a éstas los términos que rigen en los casos ordinarios. En particular, Larson señala lo siguiente:

> A rigid claims period may operate unfairly not only because the nature, seriousness and work-connection of the injury *could not reasonably be recognized by the claimant,* or perhaps *even by his doctor,* but in many cases because the injury itself does not exist in compensable degree during the claims period. This latent or delayed injury problem presents in the sharpest relief *the senselessness of uncompromising time periods.* The classic illustration is that of the apparently trivial accident that matures into a disabling injury after the claim period has

expired. (Énfasis suplido.) Larson, *op. cit.*, Cap. 15, Sec. 78.42, pág. 14.

Según indica Larson, la solución judicial en Estados Unidos al problema referido en la cita anterior ha sido la de aplicar los términos de la Ley *a partir de la fecha en que razonablemente se conoce la naturaleza real del daño sufrido por el obrero, o sea, cuando se conoce que es incapacitante.*

> The usual statute merely dates the period from the time of injury, disability, or accident, saying nothing about time of discovery of the nature of the condition. *Yet the great majority of the courts have been sufficiently impressed with the acute unfairness of a literal application of this language* to read in an implied condition suspending the running of the statute until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained ....
>
> The use of the "accident" ... as the starting point for limitations period *has not been an insuperable obstacle to the judicial achievement of the more humane rule*, as the number of "accident" jurisdictions accepting the rule attests. (Énfasis suplido.) Larson, *op. cit.*, Cap. 15, Sec. 78.41, pág. 13. Véanse: *Williams v. Dobberstein*, 157 N.W.2d 776 (D. Neb. 1968); *City of Boulder v. Payne*, 426 P.2d 194 (D. Colo. 1967). Véanse, también: *Lewis v. Chrysler Corporation*, 230 N.W.2d 538 (D. Mich. 1975); *In re Brothers*, 510 P.2d 19 (D. Wyo. 1973); *Tabor Motor Corporation v. Garrard*, 233 So.2d 811 (D. Miss. 1970).

En Puerto Rico no habíamos tenido hasta ahora la ocasión para resolver concretamente cómo debe aplicarse el citado Art. 5–A en cuestión a estas situaciones especiales en que la inhabilidad laboral no es patente de inmediato. No obstante, existen pautas en nuestra jurisprudencia que se refieren claramente al asunto en cuestión. Así, pues, hemos expresado antes que

> ... el concepto más evolucionado hoy imperante del accidente del trabajo ... ya no descansa necesaria y únicamente en la existencia de aquel evento externo, súbito e imprevisto en el curso del empleo capaz de precisarse en tiempo y lugar, sino que puede ser también la lesión o efecto no esperados o sor-

prendentes producto de un acto realizado en circunstancias usuales y ordinarias de trabajo .... *Ortiz Candelario v. Comisión Industrial*, 90 D.P.R. 387, 395–396 (1964).

Asimismo, en *Alonso García v. Comisión Industrial*, supra, págs. 698–699, resolvimos lo siguiente:

> [N]uestra jurisprudencia revela que en la práctica la línea divisoria entre los conceptos de "accidente" y "enfermedad" va borrándose. Se ha ido apuntando cada vez con mayor claridad hacia la tendencia a no insistir tanto en la formulación de distinciones bizantinas entre dichos vocablos y a concentrar más bien en el requisito básico de causalidad, en la determinación de que existe la relación causal estatutariamente requerida entre la lesión o el daño sufrido y el empleo ....
>
> Resolvemos que la insistencia clásica en sentar finos distingos entre lo que constituye un "accidente" y lo que entraña una "enfermedad" debe ceder ante el enfoque que desde hace tiempo se ha venido dictando. Lo verdaderamente importante es determinar si ha ocurrido una lesión *inherente al trabajo o empleo concernido o que ocurra o se agrave en el curso de éste.* (Énfasis en el original.)

En cuanto a las situaciones especiales aludidas en los párrafos anteriores, aporta mucha luz al asunto lo dispuesto en lo pertinente en la Ley de Beneficio por Incapacidad Temporal, mejor conocida como SINOT, 11 L.P.R.A. sec. 201 *et seq.*, que según ya hemos resuelto es *"casi idéntica"* al Art. 5–A que estamos interpretando en el caso de autos. *Torres v. Star Kist Caribe, Inc.*, supra, pág. 1035. Dada la estrecha relación entre ambas leyes, debemos examinarlas conjuntamente conforme a lo dispuesto en el Art. 18 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 18, para así esclarecer su sentido. *Zambrana Maldonado v. E.L.A.*, 129 D.P.R. 740 (1992); *Mojica Sandoz v. Bayamón Federal Savs.*, 117 D.P.R. 110 (1986); *Beauchamp v. Holsum Bakers of P.R.*, 116 D.P.R. 522 (1985).

El Art. 3(q) de la ley de SINOT, 11 L.P.R.A. sec. 203(q), dispone lo relativo a la reinstalación a su empleo del trabajador que ha sufrido una incapacidad no ocupacional, en los términos siguientes:

En los casos de incapacidad para el trabajo de acuerdo con las disposiciones de este capítulo, el patrono vendrá obligado a reservar el empleo que desempeña el trabajador al momentode comenzar la incapacidad y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:

(1) Que el trabajador requiera al patrono que lo reponga en su empleo dentro del término de quince (15) días, contados a partir de la fecha en que fuere dado de alta, y siempre y cuando que dicho requerimiento no se haga después de transcurridos un (1) año *desde la fecha de comienzo de la incapacidad* .... (Énfasis suplido.)

Si el legislador en casos de incapacidad *no ocupacional* ha dispuesto que el término de un año de esta reserva de empleo comienza a transcurrir desde la fecha en que comenzó la incapacidad, es evidente que una situación en la cual la inhabilidad es de naturaleza ocupacional, tanto más protegida, el término de esta reserva también debe comenzar a transcurrir cuando menos desde la fecha de la inhabilidad. Parece evidente que el derecho de los trabajadores que sufren de alguna inhabilidad como consecuencia de su empleo debe ser al menos de la misma índole que el derecho de los trabajadores con respecto a una inhabilidad no relacionada con el empleo, en vista *de la mayor jerarquía* de la política pública del Estado con respecto a los accidentes o las enfermedades ocupacionales, que es de arraigo constitucional. En efecto, la legislación protectora por accidentes o enfermedades no relacionadas con el trabajo se aprobó posteriormente para *extenderle* al trabajador algunos de los beneficios fundamentales que ya tenían con respecto a lesiones o enfermedades ocupacionales. R.N. Delgado Zayas, *Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño*, ed. rev., San Juan, [s. Ed.], 1996, pág. 193. Sería un contrasentido que la ley de SINOT ofreciera un beneficio mayor que el de Ley de Sistema de Compensación por Accidentes del Trabajo. Nada nosobliga a una interpretación tan poco razonable del Art. 5–A en cuestión.

La interpretación referida es cónsona, además, con lo que resolvimos en *Maisonet v. F.S.E.*, 142 D.P.R. 194 (1996), cuando reconocimos que el término de la Ley para hacer reclamaciones en casos de enfermedades ocupacionales comienza a transcurrir, no desde que el obrero tiene los primeros síntomas, sino a partir del momento en que la enfermedad se ha tornado severa y el obrero conoce que su condición es incapacitante.

## III

En el caso de autos, Laracuente sufrió una lesión o accidente del trabajo, que eventualmente le requirió ausentarse de su empleo durante tres meses y tres semanas, por orden médica del Fondo. Dicha orden del Fondo para que Laracuente recibiera tratamiento en descanso se hizo varios meses después que Laracuente sintiera los primeros síntomas de su lesión. Antes que el Fondo emitiera la decisión sobre tratamiento en descanso, Laracuente había continuado trabajando en su empleo. Hasta entonces, ni Laracuente ni sus médicos, ni los del patrono o del Fondo, habían considerado que su lesión se había tornado suficientemente severa como para que fuese necesario el tratamiento en descanso. Se trataba, pues, de una *long-latency injury*, discutida antes. Por ello, la fecha para que comenzara a transcurrir el año de la reserva de empleo del Art. 5–A en cuestión fue el 14 de abril de 2000, cuando Laracuente se ausentó del trabajo por primera vez para recibir el tratamiento en descanso ordenado por el Fondo, efectivo en dicha fecha. Fue en esa fecha que comenzó la inhabilidad de Laracuente para trabajar, conforme al diagnóstico de un médico del Fondo, y es a partir de esa fecha que comienza a transcurrir el término de un año referido. Ello significa que cuando Laracuente regresó a su trabajo el 7 de agosto de 2000, *tras sólo tres meses de ausencia en*

*tratamiento*, la reserva de empleo estaba aún en vigor, por lo que su patrono Pfizer no podía despedirlo como lo hizo.

Cualquier otra interpretación de la aplicación del Art. 5–A referido a los hechos del caso de autos sería patentemente contraria al elemento primordial del mandato legislativo en esa disposición que provee una reserva de empleo que dura *doce meses*. Cualquier otra interpretación constituiría una desincentivación injusta y poco productiva para el obrero diligente que continúa trabajando mientras puede. Cualquier otra interpretación crearía la grave incongruencia de que el patrono vendría obligado a reservarle el empleo a un trabajador como Laracuente si la lesión o enfermedad que padecía no estaba relacionada con el empleo, pero podría negarle la reinstalación si se trataba de una lesión o enfermedad ocupacional. Nada nos obliga a una interpretación tan enrevesada de una disposición que, según hemos resuelto tantas veces antes, requiere una exégesis liberal y amplia, en vista del gran sentido humanitario y alto espíritu de justicia social que la inspira. *Muñoz Hernández v. Policía de P.R.*, 134 D.P.R. 486 (1993); *González v. Adm. de Sistemas de Retiro*, 113 D.P.R. 292 (1982); *Feliciano Figueroa v. Comisión Industrial*, 84 D.P.R. 196 (1961).

Resolvemos, pues, que el despido de Laracuente por Pfizer fue ilícito. Erraron los foros de instancia y el foro apelativo al desestimar la demanda de Laracuente como lo hicieron.

— O —

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton.

En el presente recurso, por medio de una escueta sentencia, este Tribunal revoca el dictamen recurrido al concluir que un empleado accidentado fue despedido ilegalmente por no haber transcurrido, al momento del despido,

el término de reserva dispuesto por el Art. 5-A de la Ley del Sistema de Compensaciones por Accidentes del Trabajo (Ley del Sistema de Compensaciones), 11 L.P.R.A. sec. 7. Al así resolver y según se expone en las dos opiniones concurrentes suscritas, una mayoría de esta Curia, concluyó que el término de reserva de empleo dictado por el referido Art. 5-A de la susodicha ley comienza a transcurrir a partir del momento en que el empleado se ausentó de su empleo por primera vez para recibir tratamiento en descanso, según fuera ordenado por el Fondo de Seguro del Estado. Por entender que la letra de la ley y la jurisprudencia interpretativa son claras al especificar que el término de reserva de empleo comienza a transcurrir a partir de la fecha del accidente, disentimos.

## I

El 1ro de agosto de 1999 Richard Laracuente Santiago (Laracuente) sufrió un *accidente* del trabajo. Éste, mientras realizaba unos cambios de filtros en los equipos de Pfizer Pharmaceuticals, Inc. (Pfizer), su patrono, sintió un dolor punzante en la parte baja de su espalda. En vista de ello, al día siguiente acudió a un médico privado quien le diagnosticó un espasmo muscular, le ordenó terapia y lo envió a que se hiciera un M.R.I. Laracuente cumplió con las órdenes del médico mientras continuó trabajando.

Una vez recibidos los resultados del M.R.I., Laracuente acudió al médico quien le explicó que su dolor se debía a que tenía un disco herniado. No obstante, Laracuente continuó trabajando con la condición sin reportar el accidente al Fondo de Seguro del Estado (Fondo). No fue hasta el 13 de marzo de 2000, siete meses después de ocurrido el accidente, que Laracuente informó a su patrono que había sufrido un accidente del trabajo. Consecuentemente, Pfizer llenó el correspondiente informe exigido por el Fondo sobre el susodicho accidente.

Varias semanas después, Laracuente acudió por primera vez ante el Fondo quien determinó, en primera instancia, que éste requería terapias mientras trabajaba. Esta determinación fue posteriormente alterada, ordenándosele recibir las terapias en descanso. El 4 de agosto de 2000, efectivo el 7 de agosto de ese mismo año, se volvió a modificar la determinación del Fondo ordenándosele, una vez más, a recibir las terapias mientras trabajaba.

En conformidad con dicha determinación, el 7 de agosto de 2000 Laracuente solicitó reinstalación en su trabajo. Sin embargo, Pfizer, por entender que la solicitud de reinstalación se había hecho luego de transcurrido el término de doce meses durante el cual el patrono está obligado a reservar el empleo del obrero accidentado, se negó a reponerlo y procedió a despedirlo.

Así las cosas, Laracuente, su esposa y la sociedad de gananciales compuesta por ellos demandaron a Pfizer, reclamando daños por haber sido despedido ilegalmente, en contravención con lo dispuesto en el Art. 5-A de la Ley del Sistema de Compensaciones, *supra*. Por su parte, Pfizer alegó que el despido era legal debido a que la reinstalación en el empleo fue solicitada luego de que caducara el término de reserva, dictado por ley, durante el cual el patrono está obligado a reservarle el empleo a obreros que hayan sufrido un accidente en el trabajo.

El Tribunal de Primera Instancia desestimó la demanda por entender que Laracuente había solicitado la reinstalación en su trabajo luego de transcurrido el término de reserva. Dicho foro determinó, a nuestro juicio correctamente, que el término, según dispuesto en el Art. 5-A, *supra*, y en la jurisprudencia interpretativa, comenzó a transcurrir desde la fecha del *accidente*, y no desde el momento en que el empleado, en virtud del accidente, quedó inhabilitado para trabajar. En vista de ello, concluyó que el término de reserva de empleo comenzó a transcurrir a partir de la fecha del accidente, a saber, el 1ro de agosto de

1999, por lo que al momento de solicitar la reinstalación en su puesto, el 7 de agosto de 2000, dicho término había caducado. Así, determinó que el patrono estaba en la libertad de despedirlo y desestimó la demanda. Inconforme, Laracuente acudió ante el Tribunal de Circuito de Apelaciones, quien confirmó el dictamen recurrido.

Oportunamente, Laracuente acudió ante esta Curia que, a pesar de que la letra de la ley es clara en cuanto al momento en que comienza a transcurrir el término de reserva de empleo, revocó la decisión del foro apelativo. Aunque por fundamentos diferentes, una mayoría de este Tribunal concluyó que el término de doce meses, durante el cual el patrono tiene la obligación de reservar el empleo, comienza a transcurrir, no desde la fecha del accidente como claramente dispone la ley, sino desde que la lesión (causada por el accidente) se ha tornado tan severa que inhabilita al empleado de forma tal que éste no pueda trabajar, momento que se identifica con la orden emitida por el Fondo de recibir los tratamientos en descanso. Por estimar que la letra de la ley y la jurisprudencia interpretativa son claras al indicar que el término de reserva de empleo comienza a transcurrir a partir de la fecha del accidente, disentimos.

## II

En síntesis, la controversia que nos ocupa se circunscribe a determinar, una vez más, el momento que marca el inicio del término de doce meses, dispuesto en el Art. 5-A de la Ley del Sistema de Compensaciones, *supra*, durante el cual un patrono está obligado a reservarle el empleo a un obrero accidentado.

En primer lugar, debemos recordar que cuando la letra de la ley es clara y libre de toda ambigüedad, no podemos menospreciarla bajo el pretexto de cumplir su espíritu. Art. 14 del Código Civil, 31 L.P.R.A. sec. 14. Así pues, hemos

expresado que cuando el legislador se ha manifestado en un lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa. *Cuevas v. Ethicon Div. J&J Prof. Co.*, 148 D.P.R. 839 (1999); *Alejandro Rivera v. E.L.A.*, 140 D.P.R. 538 (1996); *Silva v. Adm. Sistemas de Retiro*, 128 D.P.R. 256 (1991). Teniendo presentes estas normas de interpretación estatutaria, pasemos a discutir el artículo en torno al cual gira la controversia del presente recurso.

La Ley del Sistema de Compensaciones, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 1 *et seq.*, es una legislación que consagra una serie de beneficios a todo obrero que sufra un accidente o enfermedad ocupacional en el empleo. *Rivera v. Blanco Vélez Stores*, 155 D.P.R. 460 (2001); *Soc. de Gananciales v. Royal Bank de P.R.*, 145 D.P.R. 178 (1998). Es cierto que hemos reconocido que dicha ley, por tener un carácter remediador, debe ser interpretada a favor del obrero. Sin embargo, esto no significa que, en aras de la liberalidad, podamos ir más allá de la letra de la ley. *Santos et al. v. Lederle*, 153 D.P.R. 812 (2001); *Cuevas v. Ethicon Div. J&J Prof. Co.*, supra; *Torres v. Star Kist Caribe, Inc.*, 134 D.P.R. 1024 (1994); *Rivera Coll v. Tribunal Superior*, 103 D.P.R. 325 (1975).

La Ley del Sistema de Compensaciones protege al trabajador que sufre un accidente o una enfermedad relacionada con su empleo. Entre los beneficios que ofrece, en su Art. 5-A, *supra*, dicha legislación impone la obligación a los patronos de reservar el empleo al obrero accidentado por un término definido. De esta manera, el empleado puede recuperarse de su lesión sin temer a la posibilidad de perder su empleo. El mencionado artículo dispone así:

En los casos de inhabilitación para el trabajo de acuerdo con las disposiciones de este capítulo, el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero o empleado al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:

(1) Que el obrero o empleado requiera al patrono que lo re-

ponga en su empleo dentro del término de quince días, contados a partir de la fecha en que el obrero o empleado fuere dado de alta, *y siempre y cuando que dicho requerimiento no se haga después de transcurridos doce meses desde la fecha del accidente*;

(2) que el obrero o empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición; y

(3) que dicho empleo subsista en el momento en que el obrero o empleado solicite su reposición. (Énfasis suplido.)

De una simple lectura del artículo antes reseñado se desprende que éste le impone dos obligaciones al patrono, a saber: (1) el deber de reservar el empleo por doce meses *contados a partir de la fecha del accidente*, y (2) el deber de reponer al empleado en dicho puesto, siempre que este último cumpla con ciertos requisitos. Estos requisitos los hemos resumido en los siguientes: (a) que el accidente haya inhabilitado al empleado para trabajar; (b) que éste se haya reportado al Fondo; (c) que éste solicite la reposición dentro de los quince días de ser dado de alta; (d) *que esto ocurra dentro de los doce meses de reserva de empleo desde la fecha del accidente*; (e) que éste se encuentre física y mentalmente capacitado para ocupar dicho puesto, y (f) que dicho empleo subsista al momento de la solicitud. *Cuevas v. Ethicon Div. J&J Prof. Co.*, supra; *García v. Darex P.R., Inc.*, 148 D.P.R. 364 (1999); *Santiago v. Kodak Caribbean, Ltd.*, 129 D.P.R. 763 (1992).

Aunque el artículo impone la obligación al patrono de reservarle el puesto al empleado accidentado, dicha obligación no es por tiempo indefinido. *Torres v. Star Kist Caribe, Inc.*, supra. El artículo claramente establece un término de doce meses contados a partir de la fecha del accidente. Así pues, hemos resuelto que "conforme a la letra clara del Artículo [5-A] de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 7, *el periodo de reserva comienza a discurrir a partir de la fecha del accidente*". (Énfasis suplido.) *Cuevas v. Ethicon Div. J&J Prof. Co.*, supra, pág. 842.

Reconocemos que el legislador, al imponerle al patrono este deber de reserva, intentó establecer un balance entre los intereses del empleado y los del patrono. Sin embargo, el legislador, consciente de la carga que representaría para el patrono la reserva de empleo, la limitó a doce meses. *Cuevas v. Ethicon Div. J&J Prof. Co.*, supra; *Torres v. Star Kist Caribe, Inc.*, supra; *Santiago v. Kodak Caribbean Ltd.*, supra. Así pues, hemos expresado que una vez transcurre el término de doce meses, *contados desde el momento en que ocurrió el accidente*, sin que el empleado haya sido dado de alta por el Fondo o sin que éste haya solicitado la reinstalación, el patrono está en completa libertad de despedirlo sin que se configure un despido injustificado. *Rivera v. Blanco Vélez Stores*, supra; *Santos et al. v. Lederle*, supra; *García v. Darex P.R., Inc.*, supra; *Soc. de Gananciales v. Royal Bank de P.R.*, supra; *Torres v. Star Kist Caribe, Inc.*, supra.

Por último, hemos establecido que este término de doce meses es un término de caducidad, por lo cual no puede ser objeto de interrupción. *Santos et al. v. Lederle*, supra; *Cuevas v. Ethicon Div. J&J Prof. Co.*, supra. Por esta razón, el hecho de que un empleado que se encuentre incapacitado temporalmente por razón de un accidente ocupacional, regrese al trabajo mientras se encuentra en tratamiento médico bajo el Fondo de Seguro del Estado, no tiene el efecto de interrumpir el término de reserva de doce meses que establece el Art. 5-A de la Ley del Sistema de Compensaciones, *supra. Torres v. Star Kist Caribe, Inc.*, supra.

Es a la luz de esta normativa que analizamos la situación que tenemos ante nos. Sin embargo, al así hacerlo, llegamos a una conclusión distinta a la llegada por una mayoría de este Tribunal. Veamos.

## III

Como mencionamos, Laracuente sufrió un accidente en el trabajo el 1 de agosto de 1999, hecho que no está en controversia. Según la letra clara del Art. 5-A de la Ley del Sistema de Compensaciones, *supra*, y conforme al derecho vigente según expuesto anteriormente, Pfizer estaba obligado a reinstalarlo en su puesto siempre que éste cumpliese con ciertos requisitos establecidos por ley. Entre estos requisitos se encuentran el que el empleado accidentado haya sido dado de alta por el Fondo, éste solicite la reinstalación dentro de los quince días de haber sido dado de alta y que ambas cosas ocurran dentro de un término de doce meses, *contados a partir del momento del accidente*. Al momento en que Laracuente solicitó la reinstalación, el 7 de agosto de 2000, dicho término había caducado.[1]

Laracuente sufrió el accidente el 1 de agosto de 1999, por lo que el término de doce meses o trescientos sesenta días comenzó a transcurrir desde ese momento. Consecuentemente, dicho término caducó el 26 de julio de 2000. Para esa fecha, Laracuente no había siquiera sido dado de alta por el Fondo, por lo tanto, no había podido solicitar la reinstalación en su puesto. Según anticipamos, luego de transcurrido el término de reserva, si el empleado no ha pedido la reinstalación en el puesto o éste no ha sido siquiera dado de alta por el Fondo, el patrono puede despedirlo sin que se configure un despido injustificado. *Rivera v. Blanco Vélez Stores*, supra; *Santos et al. v. Lederle*, supra; *García v. Darex P.R., Inc.*, supra; *Soc. de Gananciales v. Royal Bank de P.R.*, supra; *Torres v. Star Kist Caribe*,

---

[1] Debemos aclarar que dicho término no es equivalente a un año, sino a doce meses de treinta días o un total de trescientos sesenta días. Véanse: *Santos et al. v. Lederle*, 153 D.P.R. 812 (2001); *Santiago v. Kodak Caribbean Ltd.*, 129 D.P.R. 763 (1992).

*Inc.*, supra. Al aplicarle esta normativa a la situación de autos, nos es forzoso concluir que el término de reserva caducó previo a que Laracuente fuese dado de alta y solicitara la reinstalación. Por lo tanto, no tiene derecho a que se le reinstale en el puesto y el patrono está en la libertad de despedirlo sin que se configure un despido injustificado.

## IV

No obstante lo anterior, el Tribunal resuelve que el despido de Laracuente fue ilícito por haberse hecho dentro del término de reserva que dispone la ley. En dicha sentencia no se especifica el momento en que comienza a transcurrir dicho término de reserva al que hace referencia. Ésta sólo advierte que Laracuente fue despedido luego de ausentarse de su empleo, por órdenes del Fondo, por un periodo de tres meses y tres semanas, y que dicho despido fue ilegal por configurarse dentro del término de reserva. Aunque la sentencia no lo especifica, la mayoría, contrario a la letra clara de la ley y a nuestros pronunciamientos anteriores, implícitamente resuelve que el término de reserva comienza a transcurrir a partir de que el Fondo le ordena al empleado accidentado recibir el tratamiento en descanso.

Sin embargo, la mayoría de este Tribunal que estuvo conforme con este resultado difiere en cuanto a los fundamentos utilizados para llegar a dicha conclusión. Por esta razón, se emitieron dos opiniones concurrentes donde se exponen las distintas posiciones, la primera suscrita por el Juez Asociado Señor Fuster Berlingeri, y la segunda suscrita por el Juez Asociado Señor Rebollo López.

A. La opinión concurrente emitida por el Juez Asociado Señor Fuster Berlingeri, en esencia, reescribe la ley usurpando, al así hacerlo, el poder legislativo, al concluir que el término de reserva de doce meses dispuesto en el Art. 5-A, *supra*, comienza a transcurrir, no a partir de la fecha del accidente, como claramente dispone el artículo y así hemos

resuelto, sino a partir del momento en que la lesión causada por el accidente del trabajo inhabilitó a Laracuente para trabajar. La referida opinión concurrente parece olvidar nuestros previos pronunciamientos cuando expresamos que llegar a dicha conclusión sería "determinar qué-donde el legislador colocó la frase 'desde la fecha del accidente', tuvo la intención de decir desde la fecha de la inhabilidad sobrevenida a causa del accidente". *Cuevas v. Ethicon Div. J&J Prof. Co.*, supra, pág. 848. En aquella ocasión expresamos que, conforme a los principios rectores de la interpretación estatutaria, dicha lectura era insostenible. Resolvimos que el término comienza a transcurrir, no al momento en que se manifieste el efecto incapacitante de la lesión causada por el accidente, sino desde el momento de la *ocurrencia del accidente. Cuevas v. Ethicon Div. J&J Prof. Co.*, supra. Dicha opinión no ha ofrecido una justificación que explique por qué, en esta ocasión, los principios rectores de la interpretación estatutaria permiten la lectura del referido Art. 5-A, que recientemente este Foro había rechazado.

En *Cuevas v. Ethicon Div. J&J Prof. Co.*, supra, nos enfrentamos a una situación en la que la empleada demandante sufrió un *accidente* del trabajo, pero la inhabilidad ocasionada por éste no se manifestó hasta unos meses después. Una vez se manifestó la inhabilidad, el Fondo le ordenó el descanso. Cuando la empleada regresó al trabajo y solicitó su reinstalación, el patrono procedió a despedirla por entender que ya había transcurrido el término de reserva de empleo, contado a partir de la fecha del accidente.

La empleada instó una demanda en contra del patrono que fue desestimada por el tribunal de instancia al concluir que el término de reserva, *contado a partir de la fecha del accidente,* había transcurrido al momento de solicitarse la reinstalación en el puesto. El tribunal apelativo revocó dicho dictamen al sostener que debido a que la inhabilidad causada por el accidente no se manifestó hasta después, la

fecha que se debía tomar como punto de partida para comenzar a contar el término de doce meses de reserva *era aquella en la que se manifestó la inhabilidad y el Fondo ordenó el descanso*. Esta Curia, al revocar al tribunal apelativo, claramente resolvió que el término de reserva dispuesto en el Art. 5-A de la Ley del Sistema de Compensaciones, *supra*, comienza a transcurrir, no desde el momento en que se manifiesta el efecto incapacitante de la lesión causada por el accidente, sino *desde el momento de la ocurrencia del accidente. Cuevas v. Ethicon Div. J&J Prof. Co.*, supra. Concluimos en aquella ocasión, que determinar que donde el legislador colocó la frase "desde la fecha del accidente" para marcar el inicio del término de doce meses durante el cual el patrono está obligado a reservarle el empleo al obrero accidentado, tuvo la intención de decir "desde la fecha de la inhabilidad sobrevenida a causa del accidente" (íd., pág. 848), era insostenible a la luz de los principios que rigen la interpretación judicial de las leyes. Observamos además que cuando el legislador ha interesado que la reserva de la ley comience a transcurrir a partir del momento en que surge la incapacidad, así lo ha dispuesto. Véase Art. 3 de la Ley de Beneficio por Incapacidad Temporal, Ley Núm. 139 de 26 de junio de 1968, según enmendada, 11 L.P.R.A. sec. 203(q);[2] Art. 2 de la Ley de Protección Social por Accidentes de Automóviles, Ley Núm. 45 de 26 de junio de 1987 (9 L.P.R.A. sec. 2054(3)(B));[3] *Cuevas v. Ethicon Div. J&J Prof. Co.*, supra.

---

[2] "En los casos de incapacidad para el trabajo de acuerdo con las disposiciones de este capítulo, el patrono vendrá obligado a reservar el empleo que desempeña el trabajador *al momento de comenzar la incapacidad* y a reinstalarlo en el mismo sujeto a las siguientes condiciones:

"(1) Que el trabajador requiera al patrono que lo reponga en su empleo dentro del término de quince (15) días, contados a partir de la fecha en que fuere dado de alta, siempre y cuando que dicho requerimiento no se haga después de transcurridos un (1) año *desde la fecha de comienzo de la incapacidad*[.]" (Énfasis suplido.)

[3] "En los casos de incapacidad cubiertos por este capítulo, cuando el lesionado estuviese empleado, el patrono vendrá obligado a reservar el empleo que desempeña el trabajador *al momento de comenzar la incapacidad* y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:

Como vemos, en aquella ocasión este Tribunal resolvió que la ley era clara al disponer que la fecha en que comenzaba a contar dicho término es aquella en la que ocurre el accidente y no cuando se manifiesta la inhabilidad causada por éste. Sin embargo, hoy y ante hechos similares, una mayoría de este Tribunal, aunque no coinciden entre sí en los fundamentos para llegar a dicha conclusión, determina precisamente lo opuesto.

La opinión concurrente suscrita por el compañero Juez Asociado Señor Fuster Berlingeri trata de justificar su proceder al equipararnos una lesión muscular causada por un accidente del trabajo con una enfermedad ocupacional. De esta forma, intenta no aplicarle nuestros pronunciamientos anteriores en los cuales claramente hemos dispuesto que en casos de accidentes del trabajo el término comienza a transcurrir a partir de la ocurrencia de éstos. En su intento de justificar su proceder, incorpora a nuestra jurisdicción el concepto de "long-latency injuries" para definir aquellas lesiones que *"no se manifiesta[n] de inmediato, o no [son] reconocida[s] como tal de inmediato por el médico que examina al obrero"*. (Énfasis en el original.) Opinión de conformidad del Juez Asociado Señor Fuster Berlingeri, pág. 219. Se olvida que, en el caso de autos, Laracuente *sí* conoció el momento exacto del accidente que lo lesionó. Así lo reconoció en sus comparecencias ante los distintos foros. No estamos ante una lesión que no se manifiesta de inmediato como nos quiere hacer creer la opinión concurrente del Juez Asociado Señor Fuster Berlingeri; no olvidemos que al día siguiente del accidente Laracuente acudió al médico. Mucho menos nos encontramos ante una enfermedad ocupacional. En el caso de autos, nos encontramos ante un accidente del trabajo el cual causó una lesión cuyo efecto empeoró posteriormente.

---

"(i) Que el trabajador requiera al patrono que lo reponga en su empleo dentro del término de quince (15) días, contados a partir de la fecha en que fuere dado de alta, y siempre y cuando que dicho requerimiento no se haga después de transcurridos seis (6) meses *desde la fecha del comienzo de la incapacidad*[.]" (Énfasis suplido.)

Por último, la referida opinión concurrente trae a colación la cláusula de reserva contenida en el Art. 3 de la Ley de Beneficios por Incapacidad Temporal. Entiende que por ser casi idéntica a la disposición en controversia, éstas deben ser analizadas conjuntamente. A diferencia del Art. 5-A, *supra*, en donde el término comienza a transcurrir a partir del accidente, el Art. 3 de la Ley de Beneficios por Incapacidad Temporal, *supra, claramente* establece que el término de reserva comienza a transcurrir desde la fecha en que comienza la incapacidad. Razona que si en los casos de incapacidad no ocupacional el legislador estimó que el término de reserva debe comenzar a correr desde el momento en que comienza la incapacidad, así debe ser en el caso de los accidentes ocupacionales.

No obstante, nuestro razonamiento nos lleva a una conclusión opuesta a la llegada por esta opinión concurrente. Estimamos que cuando el legislador ha interesado que la reserva de la ley comience a discurrir a partir de la fecha en que surge la incapacidad, así lo ha dispuesto. Además, nos parece razonable pensar que si el legislador hubiese considerado que nuestra interpretación del Art. 5-A, según expuesta en 1999,[4] no fue la adecuada, tiempo ha tenido para enmendarlo de forma tal que leyese de forma similar al Art. 3 de la Ley de Beneficios por Incapacidad Temporal, antes transcrito. Cuatro años han pasado desde nuestra decisión y la Asamblea Legislativa nada ha expresado.

B. Por otro lado, tampoco estamos de acuerdo con la opinión concurrente del compañero Juez Asociado Señor Rebollo López. Éste concluye que como la reserva de empleo del citado Art. 5-A no protege al obrero accidentado que no se inhabilita,[5] y la inhabilitación del obrero se evidencia con la orden que emite el Fondo de recibir tratamiento en descanso, es con la emisión de dicha orden que

---

[4] *Cuevas v. Ethicon Div. J&J Prof. Co.*, 148 D.P.R. 839 (1999).

[5] Así lo resolvimos en *Rodríguez v. Méndez & Co.*, 147 D.P.R. 734 (1999).

se activa la protección ofrecida por el Art. 5-A, *supra*, y es desde ese momento que debe comenzar a transcurrir el término de reserva dispuesto por la ley. Según su parecer, la decisión de *Rodríguez v. Méndez & Co.*, supra, tiene que tener un efecto modificativo sobre nuestros pronunciamientos anteriores donde claramente habíamos resuelto que dicho término comenzaba a contar a partir del momento en que el obrero se accidentó.

Sin embargo, dicho razonamiento confronta varios problemas. En primer lugar, meses después de resolver *Rodríguez v. Méndez & Co.*, supra, este Tribunal resolvió *Cuevas v. Ethicon Div. J&J Prof. Co.*, supra, donde claramente dispuso que el término de reserva de empleo comenzaba a discurrir desde el momento del accidente. En dicho caso se planteó y resolvió la controversia de la siguiente manera:

> ¿Cuándo comienza a discurrir la reserva de empleo dispuesta en la Ley de Compensaciones por Accidentes del Trabajo? ¿Desde la fecha del accidente o desde que el Fondo del Seguro del [Estado] le ordena tratamiento en descanso al empleado?
>
> Resolvemos que conforme la letra clara del Art. [5-A] de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 7, el periodo de reserva comienza a discurrir a partir de la fecha del accidente. *Cuevas v. Ethicon Div. J&J Prof. Co.*, supra, pág. 842.

La controversia del caso que hoy resuelve este Tribunal es prácticamente idéntica a la de *Cuevas v. Ethicon Div. J&J Prof. Co.*, supra, y debe ser resuelta conforme a la normativa adoptada por este Tribunal en dicho caso.

Por otro lado, la referida opinión concurrente obvia la letra clara de la ley al concluir que donde dice "desde la fecha del accidente" el legislador tuvo la intención de decir "a partir del momento en que el Fondo ordena recibir tratamiento en descanso". *Cuevas v. Ethicon Div. J&J Prof. Co.*, supra. En efecto, estaríamos rescribiendo la ley en vez de interpretándola, usurpando, al así hacerlo, las prerro-

gativas de la Rama Legislativa. Así, pues, citando a Bernier y a Cuevas Segarra, hemos expresado que:

> En el desempeño normal de sus funciones los tribunales están obligados a respetar la voluntad legislativa *aunque los magistrados discrepen personalmente de la sabiduría de los actos legislativos.* Interpretar una ley en forma que sea contraria a la intención del legislador implica usurpación por la Rama Judicial de las prerrogativas de la Rama Legislativa. Por tanto, el intérprete debe abstenerse de sustituir el criterio legislativo por sus propios conceptos de lo justo, razonable y deseable. (Énfasis suplido.) *Cuevas v. Ethicon Div. J&J Prof. Co.,* supra, pág. 850. Véanse: *Rodríguez v. Aut. de Tel. de P.R.,* 145 D.P.R. 595 (1998); *Alejandro Rivera v. E.L.A.,* 140 D.P.R. 538 (1996); R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico,* 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, pág. 299.

Además, interpretar el citado Art. 5-A de otra manera sería contrario al balance que el legislador quiso establecer entre los intereses del patrono y los intereses del obrero accidentado. Al establecer dicho balance, el legislador tomó en consideración la carga que podría representar para el patrono la reserva del empleo, y por tal razón la limitó a doce meses a partir del momento del accidente. La Asamblea Legislativa no tuvo la intención de establecer una obligación al patrono de reservar el empleo indefinidamente.([6]) *Torres v. Star Kist Caribe, Inc.,* supra.

Dicha interpretación del estatuto expondría al patrono a un periodo de incertidumbre que podría extenderse indefinidamente mientras el empleado reciba tratamiento. Además, privaría al patrono de la certeza de conocer el momento exacto del inicio y fin del término de reserva, certeza que el legislador le proveyó al disponer que sólo lo tendría que reponer en el empleo si, entre otras cosas, el empleado accidentado solicitaba la reinstalación dentro de los doce meses "desde la fecha del accidente" ocupacional.

---

([6]) Pudo haberlo hecho. La Legislatura tuvo ante su consideración el P. del S. 947 el cual eliminaba por completo el término para solicitar la reinstalación. 25 Diario de Sesiones de la Asamblea Legislativa (Senado) 644 (1971).

En la opinión concurrente emitida por el Juez Asociado Señor Rebollo López se argumenta que si contamos el término de reserva desde el momento del accidente cuando en ese momento el accidente no incapacitó al obrero, estaríamos desdeñando el requisito de inhabilidad que exige la ley e interpretándola de forma contraria al propósito perseguido por el legislador de crear un balance entre los intereses del patrono y los del empleado. No estamos de acuerdo.

Como reiteradamente hemos expresado, si el empleado accidentado no se inhabilita para trabajar, no está protegido por el Art. 5-A, *supra*. Sin embargo, esto no significa que para interpretar la legislación conforme al propósito perseguido por el legislador de crear un balance entre los intereses del patrono y los del empleado, debamos leer el artículo de forma tal que ampliemos el alcance del referido Art. 5-A por un tiempo indefinido de modo que no comience a transcurrir el término de doce meses hasta que el trabajador accidentado se inhabilite, independientemente de cuándo fue el accidente.

Además, si interpretamos que el término de reserva comienza a transcurrir desde el momento en que el Fondo le ordenó al empleado accidentado recibir tratamiento en descanso, estaríamos indirectamente descontando del término de reserva todo tiempo anterior durante el cual éste recibió tratamiento mientras trabajaba. En efecto, resolveríamos que los periodos en que el Fondo ordena tratamiento mientras el empleado continúa trabajando interrumpen el término de reserva.

Dicha posición no toma en consideración que el término de reserva es un término de caducidad y, como tal, no se interrumpe. Por lo tanto, dicho término no puede interrumpirse por aquellas instancias en las cuales el obrero reciba terapias mientras trabaja. *Torres v. Star Kist Caribe, Inc.*, supra. Si los meses en que el empleado accidentado se encuentra recibiendo tratamiento mientras conti-

núa trabajando no interrumpen el periodo de reserva de empleo dispuesto en la ley, dicho término no puede descontarse del periodo de doce meses que establece el Art. 5-A, *supra. Cuevas v. Ethicon Div. J&J Prof. Co.*, supra.

## V

Por último, debemos señalar que las legislaciones creadas para compensar a los obreros que sufren accidentes del trabajo se pueden clasificar en dos grupos. Por un lado, están aquellas cuyos términos para instar la reclamación comienzan a transcurrir a partir del momento en que el daño compensable se vuelve aparente; por otro lado, existen aquellas cuyos términos comienzan a transcurrir a partir de la ocurrencia del accidente.[7]

Bajo este segundo grupo de legislación, los tribunales se han negado a conceder compensaciones a aquellos obreros cuya incapacidad surge luego de transcurrido el término concedido por ley para instar una reclamación, contado a partir de la fecha del accidente. Aproximadamente, la mitad de los estados de Estados Unidos,[8] están regidos por legislaciones que pertenecen a este segundo grupo.[9]

Nuestra Ley del Sistema de Compensaciones pertenece a este segundo grupo. Ésta dispone expresamente que los términos para que el empleado accidentado se reporte al Fondo, para que el patrono reporte el accidente y para la reserva de empleo comienzan a transcurrir *a partir de la*

---

[7] Al primer grupo de legislaciones se les ha denominado como "Injury Type of Statute". Al segundo se le conoce como "Accident Type of Statute". Véase A. Larson, *Larson's Workers' Compensation Law*, Newark, Mathew-Bender & Co., 2003, Vol. 7, Cap. 126, Secs. 126.06(1)-126.06(2).

[8] Entre otros: Alabama, California, Connecticut, Idaho, Illinois, Indiana, Kansas, Kentucky, Montana, Nebraska, New York, North Carolina, South Carolina, Tennessee, Texas, Utah, Virginia, Washington.

[9] Para algunos ejemplos, véanse: *Davis v. Standard Oil Co. of Kentucky*, 74 So.2d 625 (D. Ala. 1954); *Smith v. IML Freight Ink*, 619 P.2d 118 (D. Idaho 1980); *Huffman v. State Sign Co.*, 251 N.E.2d 489, (D. Ind. 1969); *Mauldin v. Dyna-Color/Jack Rabbit*, 416 S.E.2d 639 (D. S.C. 1992).

*fecha del accidente*. Véanse: Arts. 5, 13 y 5-A, respectivamente, 11 L.P.R.A. secs. 6, 14 y 7. El propósito del requerimiento de notificación es informar al asegurador de la ocurrencia del accidente y ofrecerle así la oportunidad a la Corporación del Fondo del Seguro del Estado para que pueda investigar adecuadamente la compensabilidad de éste. *Padín v. Cía. Fom. Ind.*, 150 D.P.R. 403 (2000); *Guzmán Muñoz v. Comisión Industrial*, 85 D.P.R. 700 (1962); *Torres v. Comisión Industrial*, 55 D.P.R. 438 (1939). Aunque el término de notificación no es totalmente inflexible, la tardanza debe ser justificada satisfactoriamente y demostrar, por ejemplo, que el Fondo no se vio afectado por la tardanza, que no se le privó de su oportunidad para investigar el accidente adecuadamente y que la demora tampoco agravó la condición del obrero. *González Saldaña v. Comisión Industrial*, 89 D.P.R. 267 (1963); *Guzmán Muñoz v. Comisión Industrial*, supra.

Este interés de proveerle al Fondo la oportunidad para investigar los accidentes inmediatamente después de ocurridos, podría verse afectado con la interpretación del Art. 5-A, *supra*, que hacen los compañeros Jueces Asociados Señores Rebollo López y Fuster Berlingeri. Según dichas interpretaciones, el empleado tendría derecho a acogerse a la reserva de empleo siempre que quede inhabilitado por un accidente del trabajo, sin importar cuándo haya ocurrido el accidente. Consecuentemente el Fondo, en ocasiones, tendría que investigar accidentes remotos para determinar, en primer lugar, que éstos son ocupacionales, acción necesaria para que estén cubiertos por la ley. Además, tendría que determinar que la incapacidad del empleado es consecuencia del accidente, determinación que se complica a medida que pasa el tiempo. Mientras más tiempo transcurra entre el accidente y el surgimiento de la incapacidad, más difícil es establecer la relación entre ambas. Esto debido a que mientras más tiempo transcurra, más vicisitudes ocurren en la vida del empleado que podrían ser responsables de la

incapacidad de éste, el Fondo tendría que determinar si la incapacidad de éste, en efecto, es producto del accidente sufrido y, por lo tanto, compensable, o si en realidad los causantes de ésta fueron sucesos posteriores no relacionados al trabajo.

## VI

En fin, por entender que la letra de la ley en controversia es clara y libre de toda ambigüedad al establecer que el término de reserva de empleo comienza a transcurrir a partir de la fecha del accidente, y que la sentencia emitida por el Tribunal es contraria a nuestros pronunciamientos anteriores, disentimos.